## FIELDS vs. THE STATE.

[INDICTMENT FOR MURDER.]

1. *Deceased, evidence of bad character of, as blood-thirsty, turbulent, &c.; for what purpose admissible.*—On a trial on an indictment for murder, under our statutes, the jury are not only required to pass upon the guilt or innocence of the accused, but also, on conviction, to find by their verdict whether it be murder in the first or second degree, and determine the character, the extent, and severity of the punishment to be inflicted. Evidence, therefore, of the general bad character of the deceased as a turbulent, blood-thirsty, revengeful, dangerous man, is competent, relevant and proper evidence, (although, under the circumstances of the particular case, it may not be sufficient to reduce the offense from murder to manslaughter,) to enable the jury to determine the degree of the offense, and the character and measure of the punishment.

2. *Good character, as man of peace; effect of proof of.*—Where the general good character of the accused as a peaceable man is proved, the following is a correct charge, to-wit: "If the prisoner has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed, but for such good character;" and if asked in writing, it is error to refuse it.

APPEAL from Circuit Court of Russell.

Tried before Hon. LITTLEBERRY STRANGE.

Appellant was indicted and tried for the murder of Jesse Dumas, found guilty of murder in the second degree, and sentenced to the penitentiary for ten years.

On the trial, it was proved that the killing took place in the public highway, in front of defendant's gate, in the month of December, 1870. It seems that defendant had attached some property belonging to deceased's sister, a

short time before the killing. A little after mid-day on the day of the killing, defendant was at the house of a neighbor named Sarter. Shortly after this, deceased, who was a powerful man, came there and commenced abusing and cursing defendant; deceased's conduct, according to the evidence, being overbearing, and indicative of a determination to force a difficulty with defendant. Finally, deceased called defendant a gin-house burning, thieving son of a bitch, twisted his nose, struck him in the face with his hat, and pulled defendant off the steps where he was sitting, jerking him by the collar. A nephew of deceased had a pistol drawn during part of the difficulty. Defendant made no resistance; "said that he did not want to fight." After this the parties separated, deceased going to Society Hill, where he remained two or three hours drinking whisky, and defendant started home. As soon as defendant got to his house, which was about three o'clock in the afternoon, he went to his room, got his gun, firing off the old loads, and reloaded it with buckshot in each barrel, remarking that he would kill the d—d rascal before morning.

The proof as to what occurred at Sarter's was made by the defendant, without objection on the part of the State.

The deceased, toward sundown, left Society Hill on horseback to go home, passing by defendant's house. Deceased was shot at defendant's gate. How the parties met there does not appear.

The witness who proved the shooting testified, that he was at Mr. Sarter's, about one hundred and fifty yards from defendant's house; that he heard loud talking in the direction of defendant's house; that he did not see any one at first, but only heard loud talking; that he heard deceased say, "Fields, I am not afraid of you," and heard defendant say, "You accused me of burning your gin-house." When the witness reached a point where he could see the parties, deceased was on his horse in front of defendant's gate, leaning forward on his horse, and the horse's head was in the direction of deceased's home. Defendant, with his gun in his hands, was in front of deceased. Defendant shot, and deceased fell dead from his horse. Another witness

testified, that about sundown she heard defendant say, "You called me a gin-house burner, and I'll shoot you;" and deceased then said, "go into your yard," about the time the gun fired. Witness could not see the position of the parties at the time, as she was behind a tree. Defendant remarked to persons at his house, shortly after the gun fired, "I have shot the d—d devil, and would kill any man who would charge me with burning his gin-house and call me a thief."

There was no proof that deceased had any weapon about him when he was shot. Defendant proved his character as a peaceable and law-abiding man to be good. There were several witnesses examined on either side, but the foregoing is the substance of all the testimony.

The defendant asked of several witnesses, some of whom he introduced, and of others on cross-examination, whether they were acquainted with the general character of deceased, &c., for turbulence, violence, bloodshed, and reck- lessness of human life. The court, upon the objection of the solicitor, refused to permit this question to be answered, and defendant excepted.

The bill of exceptions further states, that the defendant, on cross-examination of a State's witness, proposed to ask of the witness the same question as stated above, with the additional inquiry, if he, "witness, had, before the shoot- ing, communicated to the prisoner any instance of the exercise of such character by deceased." Upon objection by the solicitor, the court would not permit an answer to either question, and defendant duly excepted. The bill of excep- tions does not state the purpose for which defendant desired to make the proposed proof, nor the ground upon which the solicitor objected.

The court gave a charge to the jury, at the instance of the State, which need not be further noticed, to which defendant excepted. The defendant requested the court, in writing, to charge the jury as follows: "If the prisoner has proved a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such

doubt would have existed but for such good character."
The court refused to give this charge, and defendants duly
excepted.

L. W. MARTIN, for appellant.
ATTORNEY-GENERAL, and HOOPER, *contra*.

[No briefs on file.]

PECK, C. J.—1. Was the evidence offered by the de-
fendant, that the general character of the deceased was
that of a violent, turbulent, revengeful, blood-thirsty, dan-
gerous man, and reckless of human life, properly excluded
by the court? I feel constrained to answer this question
in the negative.

By the common law, the jury determined merely the
guilt or innocence of the prisoner; and, if their verdict
was guilty, their duties were at an end. They had nothing
whatever to say as to the punishment to be inflicted. The
court alone determined what the punishment should be, its
extent and its severity; with that the jury had nothing to
do. Their whole duty was discharged when the verdict of
guilty was pronounced.

The common law, on this subject, has been greatly
changed by our statutes, and the duties and responsibili-
ties of juries largely increased; consequently, evidence
that would have been irrelevant and impertinent at the
common law, becomes proper and necessary, under our
statutes, to enable juries to discharge their newly imposed
duties rightly and properly.

By our statutes, the crime of murder is made one of de-
grees, divided into murder in the first and second degree.
Rev. Code, § 3653. Section 3654, Revised Code, enacts,
that "any person who is guilty of murder in the first de-
gree, must, on conviction, suffer death, or imprisonment in
·the penitentiary for life, *at the discretion of the jury;* and
any person who is guilty of murder in the second degree,
must, on conviction, be imprisoned in the penitentiary, or
sentenced to hard labor for the county, for not less than

ten years, *at the discretion of the jury.*"   Section 3657 provides, that " when the jury find the defendant guilty, under an indictment for murder, they must ascertain by their verdict, whether it is murder in the first or second degree; but, if the defendant, on arraignment, confesses his guilt, the court must proceed to determine the degree of the crime, by the verdict of a jury, upon an examination of testimony, and pass sentence accordingly."

Here, we see that the degree of the crime must be determined by the verdict of a jury, upon an examination of testimony, and the punishment to be inflicted on the defendant rests in the discretion of the jury.   If the crime be murder in the first degree, the jury must determine whether the punishment shall be death, or imprisonment in the penitentiary for life.   If in the second degree, the defendant must be imprisoned in the penitentiary, or be sentenced to hard labor for the county, for not less than ten years, *at the discretion of the jury.*   Testimony is as necessary and important, to enable the jury to exercise this discretion prudently and properly, as to enable them to determine the guilt or innocence of the defendant.   The jury have two important duties to perform, and both are to be governed and controlled by the evidence, and neither can be wisely or rightly discharged without evidence.   As these duties are different, the evidence must necessarily be different.   After the guilt of the defendant is settled, the proper evidence, to determine the degree of his crime, and what should be the extent and severity of his punishment, must, in great measure, depend upon a careful examination of the circumstances, not those only immediately attendant on the killing, but those also which may reasonably be supposed to have led to it; and these circumstances should be considered in connection with the good, or bad character, both of the defendant and the deceased.   Who is prepared to say the punishment should be the same where a turbulent, revengeful, blood-thirsty, dangerous man, reckless of human life, has been slain, who had recently, only a few hours before, violated and outraged the person of his slayer, as though the party slain had been a man of

good character, and of a peaceable disposition? For myself, I can not, conscientiously, say so. Although the violence and outrage committed upon the person of the defendant, in this case, might not have been sufficient to reduce the offense from murder to manslaughter, yet, we hold it was clearly proper for the consideration of the jury in determining the turpitude of the crime, and what should be the measure of the punishment to be inflicted. If the evidence of the general bad character of the deceased was proper, only in the latter case, it should have been received, and not excluded by the court.

2. The charge in writing, which the defendant requested the court to give to the jury, we think was improperly refused. The good character of the defendant as a peaceable man was proved by several witnesses. In the case of *The Commonwealth v. Hardy*, 2 Mass., Chief-Justice PARSONS said he was of the opinion that a prisoner ought to be permitted to give in evidence his general good character, in all criminal cases; Justices SEWALL and PARKER said they were not prepared to say that testimony of general good character should be admitted in behalf of the defendant in all criminal prosecutions, but they were clearly of the opinion that it might be admitted in capital cases, in favor of life. In Roscoe's Cr. Ev. p. 96, it is said, "In trials for high treason, for felony, and for misdemeanors, where the direct object of the prosecution was to punish the offense, the prisoner was always permitted to call witnesses to his general character; and in every case of doubt, proof of good character was entitled to great weight." In the case of *Felix (a slave) v. The State*, 18 Ala. 720, it is decided that "in criminal cases, evidence of previous good character is proper for the consideration of the jury, not only where a doubt exists upon the other proof, but even to generate a doubt as to the guilt of the accused."

The evidence of good character was admitted in this case, but the error of the court consists in refusing to give a proper charge based upon said evidence. I do not say the evidence of good character should have created a rea-

sonable doubt in the minds of the jurors, in this case, when considered in connection with the other evidence. But as the law permits evidence of good character in criminal cases, it certainly intends it for the consideration of the jury, and it is for the jury alone to determine whether, when considered with the other evidence, it does or does not create a reasonable doubt as to the defendant's guilt.

It is manifest that a part of the charge given at the request of the solicitor, and excepted to by the defendant, is left out in copying it into the transcript. As the charge there appears it is unintelligible, and we can not tell whether it was right or wrong.

For the errors in excluding the evidence of the general bad character of the deceased, as a violent, blood-thirsty man, &c., and in refusing to give the charge asked, the judgment and sentence of the court below is reversed, and the cause is remanded for another trial; and the defendant will remain in custody until acquitted, or discharged by due course of law.