THE PEOPLE OF THE STATE OF NEW YORK, DEFEND-
ANTS IN ERROR, *v.* HENRY MOETT, PLAINTIFF IN ERROR.

*Right of accused to testify in his own behalf—effect of his intentionally swearing falsely as to one material fact—The power to decide whether the act in question is right or wrong, is the test of criminal responsibility—Evidence of accused's good character—is admissible in all cases.*

Upon the trial of the plaintiff in error, for murder, he was sworn and testified in his own behalf. Thereafter the court, after commenting on the right of one accused of crime to testify in his own behalf, and of the right of the jury to accept that part of such testimony which they believed to be true, and to reject that which they believed to be false, said, "when a party in a civil action deliberately swears false to one material part of his testimony, and the jury are satisfied that he has so sworn falsely, intentionally false, they are not only at liberty to reject it, but it is sometimes the duty of the jury to reject the whole. The maxim is *falsus in uno falsus in omnibus.*"

*Held,* that there was no error in the charge, as it properly left the decision of the question as to whether or not the whole testimony should be disregarded to the judgment of the jury, to be formed upon the whole case.

*Semble,* that if the court had omitted the word "sometimes," and if the charge could be considered to apply to the present case, and not solely to civil actions, it would have been erroneous, as making an absolute rule of law out of that which is only a wise maxim, to be applied discreetly by the jury, according to their judgment in each case.

The counsel for the accused requested the court to charge that the people must satisfy the jury, beyond all reasonable doubt, that at the moment the act alleged in the indictment was committed by the prisoner, he had reason, perception and understanding, sufficient to know that the laws of God and the land forbid him from committing it. The court declined to charge as

requested, but charged in the language of the Court of Appeals, in *Flanagan* v. *People* (52 N. Y., 467), and read to the jury that portion of the opinion which stated the settled law, as to the test of responsibility, to be the capacity of the defendant to distinguish between right and wrong, at the time of, and with respect to the act which is the subject of inquiry. *Held*, no error.

Evidence of a prisoner's good character is admissible in all criminal cases, and is to be considered by the jury, whether the evidence of the prisoner's guilt be doubtful and uncertain, or strong and conclusive, but in the latter case it is of comparatively little importance

WRIT OF ERROR to the Court of Oyer and Terminer, in and for the county of Columbia, to review the conviction of the plaintiff in error of murder in the first degree.

The plaintiff in error was tried and convicted for the murder of his wife.

Upon the trial the counsel for the prisoner requested the court to charge : " That the people must satisfy the jury beyond all reasonable doubt, that at the moment the act alleged in the indictment was committed by the prisoner, if he did commit it, he had reason, perception and understanding sufficient to know that the laws of God and the land forbid him from committing it, and if he had not, the jury must acquit him." In respect to which the judge stated to the jury : " I charge in the language of the Court of Appeals in that respect, and decline to charge in the language of the request, and adhere to my original charge." The " language of the Court of Appeals," as referred to by the judge, is the opinion in *Flanagan* v. *People* (52 N. Y., 487).

*John B. Longley*, district attorney, for the people.

*R. E. Andrews* and *J. Rider Cady*, for the plaintiff in error.

LEARNED, P. J. :

The prisoner was a witness in his own behalf. The court commented on the privilege now allowed to persons accused of crime to testify, and spoke of the right of the jury to accept that part of such testimony which they believed to be true, and to reject that which they believed to be false. The court then proceeded to say : " When a party in a civil action deliberately swears false to one

material part of his testimony, and the jury are satisfied that he has so sworn falsely, intentionally false, they are not only at liberty to reject it, but it is sometimes the duty of the jury to reject the whole. The maxim is *falsus in uno, falsus in omnibus.*" The counsel for the prisoner duly excepted to this last sentence, "The maxim is *falsus in uno, falsus in omnibus.*" And again, at the close of the charge, the counsel for the prisoner said, "I except now to the maxim here, '*falsus in uno, falsus in omnibus.*'"

We must first notice that the maxim was not translated by the court; nor was there anything said by the court which was equivalent to a literal translation. The law of the case the court had just laid down in language familiar to the jury. If the jury understood the Latin maxim, still there was nothing said to indicate that they were to give it any other force or meaning than belonged to the English words which had preceded it. If they did not understand it, it could have done no harm. There is no reason, therefore, that we should think this quotation of a Latin maxim (familiar to the profession) might have changed in the mind of the jury the meaning of the preceding language.

The counsel for the prisoner insists that the exception taken is sufficiently broad to cover the whole language of the court on this point. And, as this is a criminal case, involving life, we may perhaps so treat the exception.

Is there, then, anything erroneous in what was said? The remark was, in fact, limited to a civil action. But even if the jury were induced to understand that the same rule applied in criminal cases, was that error? The language is carefully guarded. It is limited to deliberate and intentional false swearing. And it says that when a jury is satisfied that a party (not merely a witness) has deliberately and intentionally sworn falsely to one material part of his testimony, they are at liberty to reject it; that is, the part to which he has sworn falsely. Of course, there can be no doubt of that proposition. Then the court proceeds to add that in such cases it is sometimes the duty of the jury to reject the *whole.*

The court had been saying just previously that, in the case of prisoners testifying in their own behalf, the jury are not bound to believe all they say. And the court then proceeded with the case

where the jury are satisfied that a party has intentionally sworn falsely to one material part, and said, not (as the prisoner's counsel construe the language) that the jury are at liberty to reject the *whole*, but that the jury are not only at liberty to reject *that one part*, but that it is sometimes their duty to reject the *whole*.

That left the matter just where it belonged. It is the province of the jury in each case to decide whether intentionally false swearing in one material point should, or should not, cause them to reject all the testimony of the witness. The rule on this matter is not a rule of law, but of common sense in judging of evidence. If we have caught a man in a lie, we become doubtful of him, and yet we sometimes believe him.

If the court had omitted the word "sometimes," and if the charge should be considered to apply to the present case, and not solely to civil actions, we should have thought the charge erroneous. It would have made an absolute rule of law out of that which is only a wise maxim to be applied discreetly by the jury, according to their judgment in each case. (*Warren* v. *Haight*, 62 Barb., 492; *Pease* v. *Smith*, 61 N. Y., 483; *Place* v. *Minster*, 65 Id., 89.) The case of *People* v. *Evans* (40 N. Y., 1) is not to the contrary. There Near testified that on a former trial he had perjured himself. It was held that his evidence unsupported was not sufficient to convict the defendant of subornation of the perjury alleged to have been committed on the former trial. And clearly so, because there was no more reason to believe Near's testimony given on the one trial than that given on the other.

If there had been any doubt that the effect of such false swearing was a matter for the jury, it must be at rest since the adoption of section 832 of the Code of Civil Procedure. If a convict is a competent witness, it would be absurd to say that the testimony of an unconvicted perjurer is to be excluded. But we do not think that the court intended so to charge, or did so charge. We understand the charge to leave the matter to the sound judgment of the jury. The counsel for the prisoner ingeniously argue that the jury either are, or are not, in all cases, bound as matter of law to reject the whole testimony because some part is materially false. But the fair meaning of the charge is, not that there is a varying rule

of law; but that, instead of a rule of law the judgment of the jury on the whole case must determine whether they should, or should not, reject the whole testimony. If there was any doubt whether this meaning would be understood, attention should have been called to the language, and the court should have been asked to explain more fully.

There was a request to charge that the people must satisfy the jury that the prisoner had reason, perception and understanding, &c. To which the court said, I charge in the language of the Court of Appeals in that respect, and decline to charge in the language of the request. The court had previously read the law on this point from the case of *Flanagan* v. *People* (52 N. Y., 467). And he had called the attention of the jury to that part of the opinion in that case, which states the settled law, as to the test of responsibility, to be the capacity of the defendant to distinguish between right and wrong, at the time of, and with respect to, the act which is the subject of inquiry. We do not think that the prisoner was entitled to any different statement of the law.

On the argument of the writ of error a point was suggested as to which no exception was taken at the trial. The prisoner's counsel had asked the court to charge that the good character of the prisoner as a peaceable and mild person was to be considered favorably to the prisoner.

The court said that there was some evidence given tending to show the prisoner had always sustained the character of a quiet and peaceable citizen; that such evidence in a doubtful case is entitled to proper consideration; that it is important evidence in determining a doubtful case; that where the evidence is clear, convincing and conclusive, that the party charged is, however, a guilty one, then evidence of good character is of no weight and that it is only in a doubtful case that the rule will apply. To this no exception was taken.

Evidence of good character is competent in all criminal cases. (*Cancemi* v. *People*, 16 N. Y., 507.) If admissible evidence it must be considered. Otherwise it is useless to admit it. How much weight it is to have is a point for the jury; but is one on which they may very properly be advised. It is true that

" wanton killing is as much murder in the virtuous as in the vicious." (*People* v. *Hammill*, 2 Park. Cr. 223.) In other words, if the whole evidence convinces the jury of the prisoner's guilt, he is not to be acquitted because he has previously been a good man. But the question is this ; if, excluding the evidence of good character, the jury are satisfied of the prisoner's guilt, may they in such a case take good character into consideration? If they cannot, then this dilemma arises. If, excluding evidence of good character, the jury have a reasonable doubt, they must acquit : and hence evidence of good is not needed. If, excluding such evidence, the jury have no reasonable doubt, then they are satisfied of the prisoner's guilt, and therefore evidence of good character is to be disregarded. Hence in no case is it of any use.

Good character is always to be considered. (*Cancemi* v. *People*, *ut supra*, 506.) It " will of itself sometimes create a doubt *where none could exist* without it." (*People* v. *Lamb*, 2 Keyes, 378 ; *Stephens* v. *People*, 4 Park. Cr., 481; *Fields* v. *State*, 47 Ala., 603 ; *People* v. *Ashe*, 44 Cal., 288.)

It is true that where a clear case of guilt is made out, aside from evidence of good character, such evidence is of *comparatively* little importance. But of how much importance it is for the jury ·to say.

· These views lead us to inquire whether any wrong was done the prisoner by this charge. The fact that no exception was taken is strong evidence that under the facts ·of the case the language of the charge could have done no harm. And it will be seen that the court charged that the jury were to give this evidence such weight as they thought it was entitled to. Thus, the court did not direct the jury to disregard this evidence, even if they were satisfied from the rest of the case that the prisoner was guilty. The further remark of the court that where the evidence was clear, convincing and conclusive, evidence of good character was of no weight, must have meant that when on the whole evidence, the jury were satisfied of the prisoner's guilt, they must not acquit because he had been a peaceable man. And certainly if this was not the meaning of the court, or if any meaning was intended which the prisoner's counsel judged to be erro-

neous, the attention of the court should have been called to the alleged error.

The judgment and conviction should be affirmed.

Present—LEARNED, P. J., BOCKES and WESTBROOK, JJ.

Judgment and conviction affirmed.