Gardner *v.* The State.

1. Upon the assumption that the deceased was a man of the most desperate character for violence, the homicide, under the facts in evidence (there being no conflicting evidence), would be murder, because there was nothing to reduce it to the grade of manslaughter and nothing to excite the fears of a reasonable man that the prisoner, at the time he inflicted the mortal wound, was in immediate danger of any injury at the hands of the deceased. This being so, the rejection of evidence offered to show that the deceased had a bad character for violence is no cause for a new trial. When such evidence is admissible at all, it is for the purpose of throwing light on the guilt or innocence of the accused. When not admissible for that purpose, it cannot be received merely to guide the jury in recommending or forbearing to recommend as to the punishment. On this question the case of Fields *v.* The State, 47 Ala. 603, is disapproved.
2. Although within a few hours before the time of the homicide the deceased threatened to take the prisoner's life, of which threat the prisoner had knowledge, and although only a few moments before he was slain the deceased was in the public street armed with a pistol and approaching the prisoner with the probable

purpose of executing his threats, yet if while he was struggling with another person who had arrested him and was endeavoring to take the pistol away from him, the prisoner, seeing the struggle in progress, voluntarily ran up and shot the deceased whilst the latter was engaged with the third person and not in a situation to make any direct attack upon the prisoner, and if after being wounded the deceased abandoned his pistol and fled from the street into a house, and the prisoner pursued him and in the house inflicted the mortal wound by shooting again without any apparent necessity, the bad character of the deceased for violence would afford no substantial aid to the jury in deciding whether the prisoner acted from malice or from a *bona fide* motive of self-preservation.

3. The facts of the case not being such as fairly to raise any question of manslaughter, it was not error for the court to decline to charge the jury on that grade of homicide.

4. The opinion of a witness as to what the deceased intended to do with a pistol for the possession of which he was struggling with a third person, is not competent evidence.

5. The evidence warranted the verdict and there was no error in overruling the motion for a new trial.

March 26, 1892. Argued at the last term.

Criminal law. Murder. Manslaughter. Evidence. Before Judge ATKINSON. Glynn superior court. December adjourned term, 1890.

Candus Gardner was indicted for the murder of Isaiah Minifield, and was found guilty. He excepted to the overruling of his motion for a new trial. This motion contains the general grounds, and assigns error upon the refusal of the court to allow a witness to answer the question, "What was the general reputation of the deceased for violence?" defendant's counsel stating that his object was to prove by the witness that deceased was a notorious desperado.

Other grounds are, that the court's charge excluded from the jury the question whether, under the evidence, the defendant was guilty of manslaughter; and that the court refused to charge, as requested, that if the jury believed, from the evidence and all the circumstances of the case, that at the time of firing the fatal shot the

prisoner believed, acting under the fears of a reasonably courageous man, that the deceased intended to commit upon him a personal injury less than a felony, then such killing would be voluntary manslaughter. Also, that the court refused to charge thus, as requested: "The law of Georgia was never intended to make a race of cowards, but simply to preserve the lives of her citizens, and to prevent cold-blooded and deliberate murder; and therefore no man is required to flee from his assailant to preserve his life, but may stand his ground and protect his life under all circumstances from him who unlawfully imperils it."

The remaining ground is, that the court refused to allow a witness for the State to answer the question, "What was your opinion from the fact of deceased's struggling with Gilbert Williams for that pistol; what did you think he was going to do with it?" The witness had stated fully the facts and circumstances attending the struggle between deceased and Williams for possession of the pistol, and to the question of the solicitor-general, "Do you know any cause that Candus had to shoot him?" had answered, "He had threatened to take his life," which threat had been communicated to the prisoner shortly before that time.

For the other facts see the decision.

HARRIS & SPARKS and DESSAU & BARTLETT, for plaintiff in error.

W. A. LITTLE, attorney-general, by J. H. LUMPKIN, and W. G. BRANTLEY, solicitor-general, *contra.*

BLECKLEY, Chief Justice.

In *Doyal* v. *The State*, 70 *Ga.* 147–149, this court recognized the doctrine that the character of the deceased for violence is admissible in evidence only where it is shown *prima facie* that the accused had been assailed and was honestly seeking to defend himself. In addi-

tion to the authorities on the subject cited by HALL, J., in that case, see 1 Criminal Defenses (Horrigan & Thompson), 618 to 696.   In the present case, it is manifest that the accused, when the homicide was committed, was not endeavoring to defend himself, but was making and following up an attack which was altogether unnecessary for the immediate protection of his life or person.   There is no doubt or obscurity in reference to the facts and circumstances ; the evidence is not conflicting.   At the time the mortal wound was given, not only was the accused in no immediate danger of any injury, but there was nothing to excite the fears of a reasonable man that any such danger existed.   However desperate the character of the deceased for violence may have been, there was nothing to reduce the homicide to any grade of manslaughter, much less to justify it.   There was, consequently, no evidentiary purpose for his bad character to subserve, and the evidence to establish it was properly rejected.   When such evidence is admissible at all, its primary object must be to throw light upon the guilt or innocence of the accused, including, of course, the proper grading of his offence, should he be guilty of any.   When the jury have it before them for this purpose, they may use it as a guide in recommending or forbearing to recommend as to the punishment ; but we wholly repudiate the doctrine inculcated by the case of Fields v. The State, 47 Ala. 603, that it may be received and used for the latter purpose only, when inadmissible for the former.   The law considers the murder of a bad man no less criminal than the homicide of a good one.   All lives are equal ; the life of the best is no more sacred against the crime of murder than the life of the worst.   When character is not relevant as evidence either to justify or mitigate a homicide, it has no relevancy to the question of punishment.   Its tendency to negative or mitigate guilt is

the sole reason for considering it in mitigation of punishment; and when that tendency is so completely absent as to require its exclusion on the principal question, the incidental question is disposed of. Any recommendation which the jury are competent to make as to punishment is to be made upon such facts as are admissible upon the inquiry as to the crime. The whole investigation to which the evidence is addressed relates to the fact of crime, none of it to the measure of punishment. Such, at least, is the system of criminal procedure in this State, there being no statute which provides for enlightening the jury for the distinct and separate purpose of aiding them in the exercise of their discretion as to punishment. The doctrine of Fields *v.* The State, *supra*, has been widely, and we think justly, criticized. Without the least hesitation, we take part with those whose disapprobation of it has been expressed. Many criticisms might be cited, but it is enough to refer to one, 1 Crim. Defenses, *supra*, 693.

2. We have already said there was no error in excluding the offered evidence to show the bad character of the deceased for violence. The material facts touching the homicide are indicated in the second head-note. Under these facts, how could bad character for violence afford any substantial aid to the jury in deciding whether the prisoner acted from malice or from a *bona fide* motive of self-preservation? To ask the question is to answer it.

3. Nor was there anything in the case to fairly raise any question of manslaughter. Although the deceased desired and intended to make a deadly assault upon the accused, he had not actually made any; he was effectually prevented by a third person from so doing for the time being. While the preventive measures were in progress, and before they had failed of their purpose, the accused voluntarily ran up, shot the deceased, and

then pursued him into a house and there inflicted the mortal wound by again shooting him, without any apparent necessity or fresh provocation. All the marks or *indicia* of manslaughter seem to be wanting ; no question as to that grade of homicide was involved in the evidence.

4–5. There was no error in ruling out the opinion of a witness as to what the deceased intended to do with the pistol, nor in overruling the motion for a new trial.

*Judgment affirmed.*