[Criminal No. 310.   Filed June 25, 1912.]

[125 Pac. 717.]

## WILLIAM CAMPBELL, Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. HOMICIDE—EVIDENCE—ADMISSIBILITY.—Where accused was the aggressor and sought decedent to kill him, and, when in no danger from him, killed him, evidence of prior difficulties between the parties was inadmissible.

2. HOMICIDE—"MURDER IN THE FIRST DEGREE."—A murder committed on express malice is murder in the first degree.

3. HOMICIDE—EVIDENCE—SELF-DEFENSE.—Where the claim of self-defense is supported by evidence justifying a charge thereon, accused may show hostile feelings of decedent toward him and prior difficulties, as affecting the reasonableness of accused's conduct.

4. HOMICIDE—EVIDENCE—SELF-DEFENSE.—Where the evidence is conflicting as to whether accused or decedent was the aggressor, evidence of decedent's hostile feelings toward accused and prior difficulties between the parties is admissible to show who was the aggressor.

5. HOMICIDE—EVIDENCE—ADMISSIBILITY.—Where a killing was committed on express malice and accused was the sole aggressor, and in no danger from decedent at the time of the killing, evidence of prior difficulties between the parties and of decedent's feelings toward accused was inadmissible on the issue of the *quantum* of punishment.

6. HOMICIDE—EVIDENCE—DANGEROUS CHARACTER OF DECEDENT.—The dangerous character of decedent is only admissible when there is testimony that accused acted in self-defense after some overt act on the part of decedent calculated to impress accused with a reasonable belief that he was in danger.

7. HOMICIDE—MITIGATION — EVIDENCE—ADMISSIBILITY.— Evidence in mitigation to be admissible in a homicide case must throw some light

on the guilt or innocence of accused, including the proper grading of the offense, should he be guilty of any, but, when not of such a character, it is not relevant to mitigate the punishment.

8. HOMICIDE—MURDER IN THE FIRST AND SECOND DEGREES—INSTRUCTIONS.—An instruction on murder in the second degree which fails to state that there must be no circumstances of mitigation, justification, or excuse is erroneous.

9. HOMICIDE—HARMLESS ERROR — ERRONEOUS INSTRUCTIONS.—Where a verdict of murder in the first degree is supported by evidence of guilt of that degree only, error in instruction on murder in the second degree, is technical, and must be disregarded as required by constitution, article 6, section 22.

10. CRIMINAL LAW—HARMLESS ERROR—TECHNICAL ERRORS—"MATERIAL."—To justify a reversal of a conviction on the ground of error, the error must have been of a material character, and must have deprived accused of a substantial right, the word "material" meaning something of weighty character, substantial, of consequence, not to be dispensed with.  ·

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Yavapai. Edward M. Doe, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Leroy Anderson and Mr. Richard Lamson, for Appellant.

Mr. G. P. Bullard, Attorney General, for Respondent.

FRANKLIN, C. J.—This was an indictment for murder. There was a conviction of murder in the first degree with the death penalty affixed. Defendant appeals.

This melancholy tragedy was enacted in Prescott on the ninth day of May, 1911, and from the circumstances surrounding the case, as disclosed by the evidence, it is marked as one of peculiar atrocity. On the day of the homicide, Ernest Presti, otherwise known as Kid Kirby, about 3 o'clock in the afternoon, was walking leisurely along the sidewalk on Montezuma street, going north on his way to the postoffice. On his way Presti had stopped at the store of a merchant about the purchase of some clothing. Presti was observed walking along the street leisurely, looking forward, and pres-

ently the defendant, Campbell, was seen going in the direction of Presti on the run with a pistol in his hand; Presti being ahead of him quite a distance. When the defendant got within about thirty feet of Presti and unobserved by him, the defendant fired a shot at Presti which took effect in his back. At the first shot Presti screamed, and ran about thirty feet, and the defendant, still following fired a second shot from his pistol, and thereupon Presti fell mortally wounded. The defendant then walked up to where Presti lay, and, as one of the witnesses stated, "as though he was going to shoot him lying down." The defendant kept following Presti until he fell in the street, being then about fifteen feet behind Presti, and still holding his pistol in readiness for further use. During all this time, according to the testimony for the prosecution, not a word had been uttered by Campbell or Presti, except Presti's exclamation at the first shot. When Presti fell, the defendant stopped and waited until he had tried to raise himself up and sink back, when he turned, and went down the street in the direction whence he came. Presti was unarmed. A crowd had collected by this time, and the defendant, leaving the prostrate form of his victim, crossed over the street on to the plaza, the people following him with indications of indignation for his act, when the defendant flourished his pistol as if to intimidate the crowd. A deputy sheriff thereupon covered the defendant with a weapon, and, disarming him, placed the defendant under arrest. Shortly after falling mortally wounded in the street, Presti was carried onto the plaza, where he died.

The defendant, being a witness, gave his version of the affair as follows: "I went back to my room on Granite street, and from there back uptown on Montezuma street. I saw Kirby when I got near Birch Brothers saloon. I saw him going down the street ahead of me. This was between 2 and 3 o'clock. I ran down to him, right to him, and we were right in front of Levy's store when I says to him. 'Kid Kirby, you have been running me long enough. Now it is time for you to run.' And he said, 'Cut that out.' He happened to see my pistol, and he started to run and I shot him. I won't say whether I shot twice, three times, or what. After that I came across the street and over here to the jail." It further appears from the testimony, so far as it was permitted

to be introduced, that there was considerable ill-feeling between the defendant and Presti, and that they had some difficulty or altercation on and previous to the day of the homicide. Witnesses for the prosecution testified that on the morning of the homicide the defendant had stated that he would lay for Kid Kirby and fix him when he went up the street. The autopsy disclosed that the fatal bullet entered the back of the deceased just below the right shoulder blade, and was such a wound as would usually cause instant death.

The defendant attempted to introduce testimony of previous transactions, relations, and difficulties between himself and the deceased, and his mental condition at the time of the homicide. Except in a few particulars, the court restricted this character of proof to the circumstances surrounding the transaction at the time of the killing on the ground that it was no part of the *res gestae,* no self-defense appeared from the evidence, and the insanity of the defendant was expressly disclaimed. The foregoing salient facts in evidence have been recited as material to a clear understanding of the errors assigned.

The legal questions involved are presented in assignments of error, as follows:

1. The trial court erred in refusing to admit testimony of the transactions between the defendant and the deceased happening on the same or previous day to the killing.

2. That the trial court erred in arbitrarily limiting the *res gestae* to the particular spot where the killing occurred.

3. That the trial court erred in instructing the jury with reference to murder of the first degree that there must be no circumstances of mitigation, justification or excuse and in not instructing the jury that the absence of the same circumstances characterizes second degree murder.

4. The trial court erred in sustaining objections to evidence offered by defendant as to his mental condition at the time of the killing. The trial court erred in refusing to admit evidence of the previous relations of the defendant and the deceased and of the difficulties occurring between the two on the same and the previous days to the killing, and in refusing to admit evidence of these relations and difficulties and the facts and circumstances relating thereto for the purpose of mitigation, justification, extenuation or excuse, and

in excluding all of such evidence, and in ruling that such evidence is admissible only on the theory of self-defense.

There is and can be no pretense that the facts of the present case bring it within any of the rules which govern the exercise of the right of self-defense. At the time of the homicide the accused was the sole aggressor. He was in no danger from the deceased, and could have had no apprehension of any danger. He sought out and followed up the deceased to effect his destruction. There was no necessity for any encounter, and none occurred. The defendant armed himself with a pistol, and watched his opportunity. Then, unobserved by the deceased, pursued him along the street for more than a city block, and still unobserved, mortally wounded him by a shot in the back. The deceased had no opportunity to defend himself, or to make good his retreat. No knowledge of his impending danger, no thought that his enemy was following him up to encompass his destruction, and, if he had any consciousness of the matter at all, it was only the momentary but bitter reflection that his enemy had accomplished his destruction. Under such a state of facts, there is no provocation which the law in this state will recognize to extenuate or reduce the degree of the crime. The attending circumstances surrounding the commission of the homicide gave it the character of a willful, deliberate and premeditated murder, a murder committed upon express malice, and such is murder in the first degree in this state. There was, indeed, nothing attending or giving character to the act which the law regards as a matter of justification, excuse or mitigation.

Where there is a claim supported by some evidence of self-defense, where the proof justifies the giving of a charge on the law of self-defense, defendant may, for the purpose of showing deceased to have been the aggressor, and the killing to have been necessary in self-defense, show hostile feelings on the part of the deceased toward him, previous difficulties, quarrels, and the like. But, where the law of self-defense is not in the case, evidence of the hostile feelings, or acts of the deceased, or of previous quarrels, is irrelevant and inadmissible on the part of the defendant. 21 Cyc. 962. Where self-defense is in the case, such evidence is admissible, not to excuse or justify an unlawful attack or killing, but for the purpose of throwing light upon the conduct of the

XIV Ariz.—8

deceased at the time of the encounter, and as affecting the reasonableness of defendant's own conduct, and where there is a conflict in the evidence as to who was the aggressor, as tending to show who was the aggressor. There was not an act done or a word spoken which, at the time of the tragedy, and illustrated by the character of the deceased, and the previous relations and difficulties of the parties, and construed by the defendant in the light of that character, as would in law be such a provocation sufficient to mitigate the offense to a lower degree. The evidence offered could not be on the ground that it would constitute what the law deems a sufficient provocation to extenuate the guilt of homicide. That can never be when the killing is deliberate or of cool purpose. For the provocation which is allowed to extenuate in the case of homicide must be something which a man is conscious of, which he feels and resents at the instant the fact which he would extenuate is committed. 1 Russ. Cr. 513–514. The extenuation admitted in cases of provocation is the indulgence which the law extends to the first transport of passion, in condescension to human infirmity, to the *furore brevis* which, while the frenzy lasts, renders a man deaf to the voice of reason. A sane man (and the plea of insanity is expressly disclaimed in this case) can be either the slave or master of his passions, and the criminal law, while indulging to a humane extent the mere infirmities of human nature, nevertheless requires the exercise of this mastery. The law upon the subject of provocation did not have the remotest application to the case before the court.

The evidence offered by the defendant having no legal efficiency in reducing the crime of which he stood charged, or to justify or excuse the commission of the homicide, the action of the court in confining the *res gestae* to within a few minutes of the killing was not error, and permitting evidence of what transpired within a few minutes of the killing was as liberal as the principles of the administration of criminal justice would authorize the court to grant.

But it is contended that such matters ought to be heard as some evidence to weigh with the jury in fixing the *quantum* of the punishment, relying upon the doctrine announced in *Fields* v. *State,* 47 Ala. 603, 11 Am. Rep. 771, and *Fletcher* v. *People,* 117 Ill. 184, 7 N. E. 80.

Palliating considerations, if there be any, might move the pardoning power to exercise its clemency, but it is the duty of the courts and juries to be governed by the law and evidence, and the evidence must be legal evidence, relevant, and material to the inquiry at hand. It is of great importance to the correct decision of controversies that no evidence shall be heard which is foreign to the issue; and the rule is no less applicable and useful in criminal than in civil cases. Upon this principle, and because, if received in the case at bar, evidence of the previous relations of the defendant and the deceased and the character of the deceased for temper and violence could not rationally and legally affect the degree of the homicide, but might mislead the jury, we hold the court was right in excluding it.

The case of *Fields* v. *State,* 47 Ala. 603, 11 Am. Rep. 771, is strongly urged by defendant in support of his contention that, even if such evidence was inadmissible to mitigate the crime, it should have been received to mitigate the *quantum* of the punishment.

Equality before the law is a maxim of universal justice, and the life of the most abandoned is equally entitled to the protection of the law, as that of the most elevated and refined. It is for no man to say which may be taken and which may be spared. Because a man has a character for turbulence and violence and previous quarrels and difficulties have taken place, there is no law which justifies an act of individual satisfaction or vengeance or permits the moderation or ferocity of the injured party to determine what shall be the measure of his redress. It is just as serious in the eye of the law to murder a bad man as a good man. But in the Fields case this principle is distinctly repudiated, and we are told that it is less a crime to kill a turbulent and violent man than it is to kill one who is peaceable and orderly. This novel doctrine of the Fields case has met with much disapprobation, and has been many times condemned. In *Gardner* v. *State,* 90 Ga. 310, 35 Am. St. Rep. 202, 17 S. E. 86, the court says: "However desperate the character of the deceased for violence may have been, there was nothing to reduce the homicide to any grade of manslaughter, much less to justify it. There was consequently no evidentiary purpose for his bad character to subserve, and the evidence to establish it was properly rejected. When such evidence is

admissible at all, the primary object must be to throw light upon the guilt or innocence of the accused, including, of course, the proper grading of the offense, should he be guilty of any. When the jury have it before them for this purpose, they may use it for a guide in recommending or forbearing to recommend as to the punishment, but we wholly repudiate the doctrine inculcated by *Fields* v. *State,* 47 Ala. 603, 11 Am. Rep. 771, that it may be received and used for the latter only, when inadmissible for the former. . . . The whole investigation to which the evidence is addressed relates to the fact of crime. None of it goes to the measure of punishment. . . . ''

The doctrine of the Fields case has been condemned *eo nomine* by the supreme court of the state which announced it, and has been distinctly overruled by the Alabama court. The supreme court of Alabama, in *Green* v. *State,* 143 Ala. 10, 39 South. 362, on rehearing, in observing that it is important to the administration of the criminal law that the doctrine laid down in the Fields case be corrected, and after citing several cases from that court, say:

''The principle deducible from these cases is that evidence of the turbulent, bloodthirsty, and dangerous character of the deceased is only admissible when there is testimony tending to establish that the accused acted in self-defense, where some overt act on the part of the deceased is shown, calculated to impress his slayer with the reasonable belief that he is in danger of suffering grievous bodily harm or death, and there is no reasonable mode of escape, and this for the purpose of determining who was the aggressor. In the absence of such an act on the part of the deceased, his character for turbulence and violence is wholly irrelevant.

''It has never been the law in this jurisdiction that, because a man has the reputation of being turbulent and violent, his life may be taken. On the contrary, it has been uniformly held that whatever may be a man's character for desperation and recklessness, he is entitled to the protection of the law; and it is as much a crime in the eye of the law to slay him as it is the most peaceable and law-abiding citizen in the community. Evidence, therefore, of the character of the deceased for violence and the like, when properly admitted, is limited in its

consideration by the jury to determining solely the meaning of his overt act or demonstration."

In another case the supreme court of Alabama, in the case of *Rhea* v. *State,* 100 Ala. 119, 14 South. 853, say that the character of the deceased for turbulence, violence and quarrelsomeness furnishes no excuse or palliation for aggressive action, nor when the difficulty is brought on or sought by the accused. On doubtful questions as to who was the aggressor it should be taken into account, on the theory that more prompt and decisive measures of defense are justified when the assailant is of known violent and bloodthirsty nature. But that the principle is confined to defensive measures only.

We have no hesitancy in adhering to and giving our approval of the doctrine that evidence in mitigation to be relevant must tend to throw some light upon the guilt or innocence of the accused, including the proper grading of his offense, should he be guilty of any, but, when not of such a character, it is not relevant simply for the purpose of mitigating the *quantum* of the punishment.

Defendant complains that the court erred in instructing the jury with reference to murder in the first degree that there must be no circumstances of mitigation, justification or excuse, and in not instructing the jury that the absence of the same circumstances characterizes second degree murder. The court did commit error in respect of the matter stated. But was it merely a technical error which does not affect any substantial right of the defendant, or is it material error which requires a reversal of the case? The evidence discloses murder in the first degree or nothing—no mitigation, excuse or justification in the testimony. "When on a trial for murder the evidence proves murder in the first degree or nothing, the court need not instruct the jury as to other grades of the offense." 21 Cyc. 1066.

The instructions of the court should be in accord with some phase of the testimony, and should be so framed as to correctly state the law in the light of the testimony. The court should have submitted a charge of murder in the first degree without involving the question of mitigation, justification or excuse, as no phase of the testimony required it, but, having done so, we cannot perceive why such an instruction is not more

favorable to the defendant under the facts of the case than he was entitled to.

If the law required absolute accuracy, but very few convictions could be sustained. Some technical error, perhaps, creeps into most every trial. But when error has been committed, in the trial of a criminal case, it must further appear that such error was of a material character, and deprived the defendant of a substantial right before it will be ground for reversal. "Material" is defined as something of solid or weighty character; substantial; of consequence; not to be dispensed with. And in law such as does or would affect the determination of the case. Webster's Dictionary.

Where there is a verdict of murder in the first degree, supported by evidence which shows that degree only, the verdict will not be reversed for error in instructing the jury as to murder in the second degree, there being no testimony whatever to prove that crime. No cause shall be reversed for technical error when upon the whole case it shall appear that substantial justice has been done is the mandate of our constitution. Sec. 22, art. 6, Const. Ariz.

It may be observed in passing that a defendant charged with crime will be protected in every material right given him under the law, but it must also be borne in mind that the command of the constitution, that no cause will be reversed for technical error in the proceedings when upon the whole case it shall appear that substantial justice has been done, must be obeyed. Men must be taught that they cannot hope to escape the consequence of their wrongdoing in this state through a mere technicality not affecting any substantial right. We are satisfied from a careful examination of the record, and a consideration of each assignment of error, that this cause is free from prejudicial error, and that substantial justice has been done.

The cause is remanded to the superior court of the state of Arizona in and for Yavapai county, with directions to carry the judgment of the district court of the fourth judicial district of the territory of Arizona, in and for the county of Yavapai, into execution.

CUNNINGHAM, J., and DUFFY, J., concur.

N. B.—ROSS, J., being disqualified and announcing his disqualification in open court, the remaining judges, under sec-

tion 3 of article 6 of the constitution, called in Hon. F. J. Duffy, Judge of the superior court of the state of Arizona in and for Santa Cruz county, to sit with them in the hearing of this case.

NOTE.—As to admissibility of evidence of bad character of deceased in prosecution for homicide, see note in 2 L. R. A., N. S.,.102.

The question of character and reputation of the deceased as affecting homicide is treated in a note in 3 L. R. A., N. S., 352.

As to what is murder, see note in 134 Am. St. Rep. 727.

As to the general nature of the plea of self-defense, see note in 109 Am. St. Rep. 805.

As to necessity that deliberation and premeditation be alleged and proved, see note in 3 Ann. Cas. 936.