[Criminal No. 653. Filed May 23, 1927.]

[256 Pac. 111.]

SLOAN BURGEN, Appellant, v. STATE, Respondent.

112

Mr. W. E. Ferguson, for Appellant.

Mr. John W. Murphy, Attorney General, for the State.

LOCKWOOD, J. — Sloan Burgen was informed against by the county attorney of Coconino county for the crime of murder. To this information he entered a plea of not guilty, and the jury, on the fifteenth day of June, 1926, found him guilty of murder in the first degree, fixing the penalty at life imprisonment. A motion for new trial was made on the ground of newly discovered evidence, supported by the affidavits of defendant and three witnesses who had testified at the trial of the case. The motion was overruled, the court duly sentenced defendant in accordance with the verdict, and the matter is before us for review. Defendant completed his record on appeal, and filed his brief in the time required by law, but the state has not seen fit to reply. Notwithstanding that we might consider this as a confession of error, and reverse the case for that reason alone, we have considered the appeal on its merits.

The assignments of error are some eight in number, but are merely the general ones set forth in the statute. Defendant argues them as raising four questions: First, that the jury was misdirected on the law; second, that certain evidence was improperly rejected; third, that the evidence was insufficient to justify the verdict, and fourth, that the motion for new trial should have been granted.

So far as the sufficiency of the evidence is concerned, we have examined the record carefully and are satisfied that it is ample to sustain the verdict, and the instructions of the court seem fairly to cover the law applicable to cases of this kind. Indeed, defendant does not seriously urge these two matters. His real complaint is that the court refused repeatedly to admit evidence of previous difficulties between deceased and defendant, and of

threats made by deceased against defendant and communicated to the latter prior to the killing.

It appears from an examination of the reporter's transcript that the evidence for the state showed defendant, without any visible excuse or provocation, approached deceased and shot him in the back, firing some six shots which took effect, two being of a nature that would inevitably prove fatal. Defendant admitted the killing, but claimed it was done in self-defense, and endeavored to show by different witnesses that deceased had repeatedly threatened his life, and that such threats had been communicated to him. The court refused to admit such evidence on the authority of *Campbell* v. *Territory,* 14 Ariz. 109, 125 Pac. 717. The doctrine laid down in that case is as follows:

When there is a claim supported by some evidence of self-defense, and the proof justifies the giving of a charge on the law of self-defense, defendant may, for the purpose of showing deceased to have been the aggressor, and the killing to have been necessary in self-defense, show hostile feelings on the part of the latter toward him, previous difficulties, quarrels and the like. But, where the law of self-defense is not in the case, evidence of the hostile feelings or acts of the deceased, or of previous quarrels, is irrelevant and inadmissible on the part of the defendant. Where self-defense is in the case, such evidence is admissible, not to excuse or justify an unlawful attack or killing, but for the purpose of throwing light upon the conduct of the deceased at the time of the encounter, and as affecting the reasonableness of defense or conduct, and, where there is a conflict in the evidence as to who was the aggressor, as tending to show who was the aggressor.

The only evidence tending to raise the issue of self-defense was the following testimony, given by defendant:

"Q. Who else did you see at that time? A. Just as I turned the corner of the house I saw Joe Gans and Charley Hall standing facing each other, with Joe Gans' back towards me; just as I got pretty close Charley Hall raised his head and nodded his head and says, 'There he comes now.'

"Q. What next? A. When I got up within about between 8 and 10 feet of Joe, I called him, and he looked around over his shoulder, but he didn't turn around. I believe I can show it better than I can tell it if I get two more people here—this is me (after getting two more men to demonstrate) and that is Charley Hall and this is Joe Gans; I was coming in that direction and Charley and Joe was standing here.

"Q. Which way was Charley Hall looking? A. Towards Joe and me. When he looked up, he says to Joe, 'There he comes now,' and Joe he raised up his hands and commenced unfastening his coat. When I got up about the distance from here to Mr. Parsons, he looked back over his shoulder and whirled this way; he looked back over his shoulder and whirled this way and I made two shots, and he turned like this (indicating).

"Q. Was there anything said before you did the shooting? A. No, sir; I just called him, and when he looked back over his shoulder that way (indicating) I made two shots; then he turned around this way and made about two steps when I stopped shooting. He started towards the door, and I started towards the corner of the house, both going in the same direction. When he saw I had stopped shooting he made another reach that way (indicating). When he got to the door he stopped and looked back; then Charley Hall runs behind me this way (indicating) and grabs me. Just as he grabs me, Joe grabbed at his gun again and I shoved Charley off and made two more shots. When I made the last two shots I run behind the corner of the house, and he went in the house I suppose. I didn't see him any more.

"Q. How many shots did you fire? A. There ought to be two shots in this arm, because that was the first thing I thought of when he reached for his gun was to break his arm. The first thing when

he reached after his gun, the first thing I thought of was to try to break his arm. When he reached for the gun one bullet struck there (indicating) and the other one there (indicating). I was pretty sure if a man got shot in the arm he would stop. He turned around that way, and I tried to get behind the corner of the house, but before I could make my escape he reached again this way (indicating), and I made two more shots. Then he went to the door and had his back practically to me but watching me, and Charley Hall grabbed me, and I shoved him away and shot at the same time.

"Q. How many shots did you fire? A. Six.

"Q. Do you know whether they all took effect in the body of the deceased? A. I am sure four did, but the last two I couldn't say where they went, because I was trying to get away from Charley and defend myself at the same time."

The question for our determination then is, Does the foregoing testimony present evidence on the issue of self-defense sufficient to go to a jury? If it does, the court should have admitted the testimony of previous communicated threats and difficulties; if it does not, its ruling excluding such last-named testimony was correct. The principle of law governing this point is well stated in the case of *Garner* v. *State,* 28 Fla. 113, 29 Am. St. Rep. 232, 9 South. 835, wherein the court said:

"There must be, at least apparently, such a demonstration of an immediate intention to execute the threats as will naturally induce a reasonable belief that the party threatened will lose his life or suffer serious bodily harm if he does not immediately take the life of his adversary. It must be such an act as is reasonably calculated to induce the belief that the execution of the threatened attack has been actually commenced. [Citing cases.] The circumstances of the killing must be such as tend to raise or support a case of self-defense. There must be, at least apparently, a hostile demonstration or overt act of attack tending to show that the accused was in such imminent danger.

"The question of the admissibility of threats is one for the court's decision. If there is the slightest evidence tending to prove a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing his life or sustaining great bodily harm, the threats should not be excluded. [Citing cases.]"

While defendant did not in his testimony explicitly state that he acted in self-defense after an overt act which raised in him, as a reasonable man, the belief that deceased was about to take his life or do him some great bodily injury, yet we think his language as a whole should be so construed. It appears from the record defendant was a more or less ignorant colored man. It is not to be expected nor is it required that his testimony should be couched in the same careful and technical manner as would presumably be that given by a man skilled in the niceties of the law of evidence. It is sufficient to raise the issue, if there can be reasonably drawn from the evidence, that facts existed which would justify the ordinary man in believing himself to be in danger, and that defendant acted under such belief.

We are of the opinion that this testimony, if true, showed an overt act by deceased which laid a sufficient foundation for the admission of previous communicated threats and difficulties. A physical demonstration which, if made by a friend, would not give a reasonable man the slightest ground for fear, might on the other hand, when made by a confessed enemy, who had previously threatened defendant's life, have given rise to a very natural and reasonable apprehension of danger in the latter. Whether or not the things defendant testified to did actually occur, and whether he was justified in his acts, were of course for the jury to determine, under proper instructions.

We believe the court erred in rejecting the evidence offered by defendant of previous difficulties and communicated threats. It is ordered that the judgment of the superior court of Coconino county be reversed and the cause remanded for a new trial in accordance with this opinion.

ROSS, C. J., and McALISTER, J., concur.