[No. 7201.]

## EHRHARDT V. THE PEOPLE.

1. CRIMINAL LAW—*Evidence—Dying Declarations*—Declarations made at a time when the declarant expects to recover are not admissible as dying declarations—(206).

2. ——*Res Gestae*—Declarations of the person whose murder is charged, made at a time which is not fixed but subsequent to the commission of the injury, and which are merely expressions of his or her opinions as to the guilt of the accused are not *res gestae*—(206).

3. ——*Report of Testimony at Inquest*—The report of the testimony of an immature and ignorant witness, at the coroner's inquest, varied from the testimony of the same witness, when examined for the people upon the trial of the indictment. Held that the district attorney might cross examine the witness, in order to refresh her memory, and endeavor to induce her to return to her statement at the inquest—(207).

But the report of her testimony before the coroner, tending to show the guilt of the accused, was held inadmissible, and its admission fatal error, not cured by its subsequent exclusion—(207, 208).

*Error to Denver District Court*—HON. GEORGE W. ALLEN, Judge.

Mr. H. N. SALES and Mr. T. E. MCINTYRE for plaintiff in error.

HON. JOHN T. BARNETT, attorney general, Mr. JAMES H. TELLER for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the Court:

The defendant was indicted for killing his wife by means of poison. The jury found him guilty of murder of the second degree and recommended him to the mercy of the Court. By section 1624 Revised Statutes 1908 all murder which shall be perpetrated by means of poison shall be deemed murder of the first degree. The abstract of the record does not contain the Court's charge, but the evidence, as abstracted, does not call for an instruction as to murder of the second degree. Why the

jury so found we do not know and speculation about it is useless. Counsel has made no argument that defendant was prejudiced by this action, but we observe that it is inexplicable. If defendant administered poison to his wife and she died from its effects, he was guilty of murder of the first, not the second, degree. If he did not so kill her, he should have been acquitted.

The judgment must be reversed for other reasons. There was error in permitting witnesses for the people to testify as to alleged declarations of the deceased which are supposed to show defendant's connection with, or commission of, the homicide. In substance they were: "I believe I am poisoned * * * He (meaning her husband) has poisoned me. * * * I didn't think he would do it, but he did. * * * Do you think he would do such a thing?" There is no attempt by the Attorney General to justify their admission upon the ground that they were her dying declarations, for the obvious reason that they were made at a time when she expected to recover. The declarations testified to, if not a history of past transactions, are nothing more than expressions of opinion that her husband poisoned her. The evidence, as a whole, might indicate that such was the conclusion of Mrs. Ehrhardt from certain other facts testified to by other witnesses supposed to have a tendency to show that her husband procured poison and gave it to her. But the declarations of Mrs. Ehrhardt were not in connection with, or a part of, any testimony by her that her husband did so, and they were made some time, it does not appear how long, after the supposed act of the defendant. Under the decision of this court in *Herren v. The People*, 28 Colo. 23, these declarations were not admissible as part of the *res gestae*.

At the coroner's inquest, held shortly after the death of Mrs. Ehrhardt, her little girl, eight years of age, testified. What she then said was reduced to writing by a policeman. At the time of the trial this child

was called for examination by the prosecution.    Upon
her direct examination her testimony was materially
different from this writing and was not harmful to
defendant.    By permission of the court, and without
objection of defendant's counsel, the District Attorney
asked her leading questions and cross-examined her
with a view to get her to change her testimony so as to
make it harmonize with the writing.    The girl, in some
respects, changed her testimony.    It was, however, more
or less contradictory and, in itself, may not have been
very harmful to defendant.    Yet, as we read  the rec-
ord, her testimony, in so far as it harmonizes with the
written statement of the officer, constitutes the only
evidence which connects defendant with the perpetra-
tion of the crime with which he was charged.    The defen-
dant objected to the production before the jury of the
written statement of the officer, which was admitted in
connection wth the cross-examination of the girl con-
ducted by the District Attorney in the presence of the
jury.    The court, over defendant's objection, allowed
all this procedure to take place in their presence and
admitted the writing in evidence.    Afterwards it was
withdrawn from the consideration of the jury.    The
Attorney General argues that though some of the evi-
dence thus brought before the jury was inadmissible
and the procedure permitted by the trial court was cal-
culated to prejudice defendant, yet, inasmuch as the tes-
timony of the girl was so contradictory and of so little
weight, the proceedings which we have detailed might
be deemed not prejudicial.    We do not think so.    The
District Attorney might properly cross-examine the wit-
ness, who was not only immature, but ignorant, and
evidently frightened and excited, in order to refresh
her memory and to get her to say on the stand what he
claimed she had said before the coroner.    But the state-
ment of the officer, which the court in withdrawing it
from the jury said was clearly not her statement, but
the language of the officer himself, and merely his con-

clusions of what she then said, ought not to have gone to the jury for any purpose. Its subsequent exclusion, in the circumstances disclosed by the record, did not remove the inevitably unfavorable impression which its admission produced. The jury might very well conclude that the declarations of the child made recently after the death of her mother were true, and that her testimony at the trial, which was quite different, and in some particulars directly contradictory, was induced by the act of the defendant, or due to the natural affection which the child had for her living parent. And so the excluded testimony may have been, and quite probably was, the very evidence on which the verdict was based. It seems also that the contents of this written statement were commented on by the District Attorney in his argument to the jury. We are firmly convinced that serious and prejudicial error resulted to defendant in at least these two particulars discussed. There are other assignments which present grave and important questions, but, as the judgment must be reversed for the reasons given and as these other questions may not arise again in the event of a new trial, we do not consider them.

*Judgment reversed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.