[Crim. No. 3767. In Bank.—January 22, 1935.]

THE PEOPLE, Respondent, v. ANASTACIO BERMIJO, Appellant.

Archibald M. Mull, Jr., for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PLUMMER, J., *pro tem.*—The defendant was tried upon an information charging him with the crime of murder, in that he did, on or about the seventh day of June, 1933, in the county of Sacramento, wilfully and feloniously kill one Felix Villasor, a human being. The jury returned a verdict of guilty of murder in the first degree, without recommendation. The defendant interposed a motion for new trial, which was denied, and thereafter judgment and sentence was passed upon the defendant, imposing the extreme penalty. From the order denying his motion for new trial, and the judgment just referred to, the defendant appeals.

Briefly stated the testimony introduced on the part of the People showed the following:

That prior to the commission of the offense of which the defendant was found guilty he and the deceased Felix Villasor were partners, or were jointly interested in farming a ranch or tract of land in the vicinity of Hood, in the county of Sacramento; that the defendant left the farm at Hood some time during the preceding month of May, and after his departure a rumor was passed around among the defendant's acquaintances that when the defendant left the farm he took some money with him that he should not have taken. Shortly thereafter the deceased with his wife Francesco Villasor and their three children moved to the town of Walnut Grove, where they were living on the day of the homicide. On the morning of the seventh day of June, 1933, the defendant having returned, went to the home of the deceased in Walnut Grove, and there engaged both the

deceased and his wife in conversation relative to the rumor that the defendant had taken with him when he went away, money that he should not have taken.

At the time the defendant went to the house where the deceased and his wife and children were living, the deceased was in the kitchen preparing a chicken which they were intending to have for their dinner. The defendant came to the door of the room leading to the kitchen, after he had been admitted to the house, stopping at the door and leaning against the same; the deceased in the meanwhile kept on working with the chicken. The defendant then spoke to the deceased about the rumor, claiming that the deceased had circulated the same. The deceased made reply to the effect that he had heard the rumor, and that the boss had circulated the report, and that he could not overcome it. At this instant while the defendant was still leaning against the door, his wife Francesco Villasor, who was nearby, came into the kitchen and told her husband, in the presence of the defendant, that she would go ahead with the cleaning of the chicken. The deceased thereupon went over to one of the walls of the kitchen and started to dry his hands on a towel. While the deceased was thus engaged in drying his hands on the towel it appears that the defendant drew a gun and shot the deceased in the back, the bullet entering just below the right scapula. The deceased thereupon grabbed an ax which was nearby and turned toward the defendant. At this instant the defendant fired a second shot. This shot took effect in the right breast just below the clavicle. The bullets so fired by the defendant at the deceased ranged downward through his body, from which death shortly followed. With the ax in his hand after the shooting began the deceased started toward the defendant. After firing the second shot the defendant ran from the house; the deceased followed a short distance, dropped upon the floor with his face downward. His wife turned him over, holding the deceased in her arms, and while in this position it appears that the defendant returned and fired a third shot, this shot striking neither the deceased nor his wife, but found lodgment in one of the walls of the building. Immediately after the killing the defendant made the remark that there were two bodies to be burned, and that he had killed them.

Two witnesses testified that the defendant, shortly before the shooting, stated that he was going to kill the deceased. To one of them he said he was going to kill the deceased even though he hung for it. This remark was made to one of the witnesses on the morning of the shooting. After the shooting the defendant stated to a witness by the name of Parks, in answer to an inquiry as to why he did the shooting, that he was mad. Also, in answer to an inquiry as to why he shot at Mrs. Villasor, he said he was afraid she would talk.

The defendant denied that he returned to the house and fired a third shot; denied that he had made statements before the shooting that he was going to kill the deceased; and also denied that he had made any statements to the witness Parks as to why he had killed the deceased; and also denied that he had made any remarks as to why he shot at Mrs. Villasor, denying, also, that he fired a third shot. The defendant also stated that he had had an argument with the deceased over the payment of bills; that he wanted the deceased to pay certain bills, which the deceased refused to do, and that the deceased said to him, "Get out", following that remark with an attempt to reach the ax which we have heretofore mentioned.

The defendant also testified that during his conversation with the deceased, the deceased went toward the ax which we have referred to, lifted the ax over his head, and swung at the defendant; that the defendant then shot at him, firing the two shots in rapid succession; that the force of the movement in swinging the ax caused the deceased to turn partly around, and that caused one of the shots to strike the deceased in the back; after firing the two shots, that he ran from the house to protect himself from the ax in the hands of the deceased.

Upon this appeal the appellant assigns as grounds for reversal that the court erred in excluding, and also in the admission of certain testimony, and that the court erred in its instructions to the jury. The appellant also urges that the court erred in permitting the prosecution to reopen its case in chief and introduce the testimony of a physician that the bullet wounds had caused the death of the deceased.

Preliminarily, we may refer to the argument of the appellant that there is no testimony in the record showing

that the bullets found in the body of the deceased actually were fired from the gun in the hands of the defendant, that is, there is no testimony in the record showing that the caliber of the gun and the size of the bullets corresponded. The testimony of the defendant himself is to the effect that he fired two shots at the deceased, and the testimony of the wife of the deceased is likewise to the effect that while the defendant was standing in the door of the kitchen he fired the two shots, following which the deceased fell upon his face and shortly expired.

In the light of these facts we think that the argument of the appellant that there is no showing that the bullets found in and taken from the body of the deceased were fired by a gun held in the hands of the defendant, requires no comment.

■ Upon cross-examination of the wife of the deceased, Francesco Villasor, the defense sought to introduce testimony to the effect that her husband drank denatured alcohol, and proceeded to ask the witness if her husband did not buy denatured alcohol at a certain drug store in Walnut Grove. To the question—"Did your husband ever use denatured alcohol?" the court sustained the objection interposed by the prosecution. This is one of the errors assigned by the appellant. No attempt and no offer was made to the court to show that the deceased was under the influence of any kind of intoxicating liquor at the time of the killing. The question simply refers to what the deceased may have done at some former time. The question was then asked: "Was your husband drinking denatured alcohol on the seventh day of June, 1933?" To this query the court sustained an objection interposed by the prosecution. As the reasons urged for the admission of such testimony the appellant made the following statement: "For the purpose of showing that the deceased drank denatured alcohol, and the effect denatured alcohol has upon the body of an individual who drinks it; in order to show his nature and his conduct at the time." This offer, of course, relates only to the general effect of denatured alcohol upon human beings generally, which, of course, would not tend to prove that the deceased was the aggressor at the time the defendant fired the fatal shots. The testimony of the defendant himself shows that

he sought out the deceased, went to the home of the deceased armed with a gun.

Our attention has not been called to anything in the record, and we have been unable to find anything therein tending to show that the deceased was a quarrelsome, turbulent or dangerous character either when sober or under the influence of intoxicating liquor. Our attention has not been called to anything in the record, nor have we been able to find anything therein tending to show, even though the deceased were of a violent disposition, that the defendant knew' thereof, or acted in the manner in which he did by reason of any such knowledge.

Our attention has been called to the case of *People* v. *Lamar*, 148 Cal. 564 [83 Pac. 993]. The facts in that case, however, show that the deceased not only was drinking, but was going from place to place making threats against the defendant, which, of course, laid a foundation for the introduction of testimony tending to show that the deceased was the aggressor.

Again, the character of the deceased must be shown by his general reputation, and not by some isolated, specific act. (*State* v. *Ricks*, 170 La. 507 [128 So. 293]; 13 Cal. Jur. 693; 13 R. C. L. 916. See, also, notes collected in 64 A. L. R. 1041.)

In the case of *Moseley* v. *State*, 89 Miss. 802 [41·So. 384], relied upon by the appellant, it clearly appears that a foundation was laid tending to show self-defense, before testimony as to the character or reputation for violence of the deceased was admitted.

We find no merit in the contention of the appellant that the court erred in refusing to order the prosecution to allow the attorney for appellant to examine certain private notes and memoranda of questions asked of the defendant, and answers made thereto by the defendant a short time after the shooting. The memoranda sought to be examined were not a statement of the defendant, were not signed by him, but were simply notes made by the district attorney of questions asked of the defendant, and answers given thereto. The appellant cites no authorities to support his contention of the alleged error.

The record, as we have stated, shows that the prosecution closed its case in chief without the testimony of

the physician thereafter called having been introduced, to the effect that the deceased died from the gunshot wounds. At this juncture the appellant moved for a directed verdict of acquittal, on the grounds that the *corpus delicti* had not been proven, that is, that it was not proven by any direct testimony that the deceased died from the effects of the shots fired at him by the defendant. The case was then reopened, and the People allowed, over the objection of the defendant, to introduce the testimony of a physician that the death of the deceased resulted from the gunshot wounds. No authorities are cited to show that this action of the trial court was erroneous, and in view of the testimony which we have stated generally herein as appearing in the record, we do not well perceive how any prejudice followed, as it clearly appears that the defendant fired two shots at the deceased, and that the deceased died within a very few minutes thereafter. It is well settled that the *corpus delicti* may be shown by circumstantial as well as by direct testimony. (See the cases cited by the court in the case of *People* v. *Hudson,* 139 Cal. App. 543 [34 Pac. (2d) 741]; *People* v. *Hill,* 2 Cal. App. (2d) 141 [37 Pac. (2d) 849].)

■ No objection appears to have been interposed to the testimony of the wife of the deceased concerning the return of the defendant and his firing of a third shot. Objection only appears to the refusal of the court to give the proffered instruction No. 52 to the jury, to the effect that such testimony was introduced solely for the purpose of attempting to connect the defendant with the offense charged in the information, and could not be considered for any other purpose.

No objection having been urged to the introduction of the testimony, or that it be allowed to be introduced for a specific purpose, the proffered instruction was properly refused.

A similar situation is presented in the case of *People* v. *Walters,* 98 Cal. 138 [32 Pac. 864]. Here, as there, the act of the defendant in returning and firing a third shot was held admissible to prove motive, and likewise, to disprove any claim of self-defense. See, also, 13 Cal. Jur. 703, as to when all the acts of the defendant connected with the offense may be admitted showing the motive and *animus*

of the defendant, even though it does show an attempt to commit an additional crime.

■ The court did not commit any error in its refusal of the appellant's proposed instruction No. 9, which is to the effect that "When the offense fails to show any motive to commit the crime charged on the part of the accused, it is a circumstance in favor of the innocence of the accused," etc. While such an instruction would be harmless, it is not error to refuse an instruction based upon assumed absence of motive. (*People* v. *Wilkins*, 158 Cal. 530 [111 Pac. 612]; *People* v. *Page*, 86 Cal. App. 148 [250 Pac. 691].) See, also, 8 California Jurisprudence, page 329, section 377, where it is held that such an instruction relates to a matter of fact and invades the province of the jury.

■ No testimony appearing in the record as to the reputation of the deceased as being a violent, turbulent or dangerous man, the court properly refused the defendant's proposed instruction No. 46 relating to that subject.

■ Without lengthening this opinion it is sufficient to say that we have carefully considered not only the proffered instructions by the defendant, which were refused, but also the instructions given by the court to the jury either of its own motion or upon the request of the prosecution, and are satisfied that the jury was not only correctly but fully instructed as to the law which should govern in reaching a verdict.

■ It is finally urged that the district attorney was guilty of prejudicial misconduct during his argument to the jury, in which the following statement was made: "Then where does—and the defendant says he fired only two shots. Well, where did the other shot come from that went over the dead body of the deceased between the dining room and the kitchen, if he only shot twice, because the bullets were in the body—two of them were taken out of the body. Then where did the other one come from? Where did the bullet, the bullet in the wall come from? Then if he is untruthful in that, and he is wilfully false in that part of his testimony, how can you believe him in any other part of it—because he denies that he shot at Mrs. Villasor, denies that he returned to the house and shot?"

At this point counsel for the appellant interposed and assigned the remarks as prejudicial misconduct. The dis-

trict attorney then resumed: "And he says that he returned to the house after he left, and he says he only fired two shots into the dead man's body, and then he went out. Well, where does the third one come from? I defy counsel or anybody else to state where the third bullet came from, if only two shots were fired. Then if he is wilfully false in that part of the testimony, how are you going to believe him in any other part? Can you? So how are they going to explain the three bullets if only two were shot—two fired? How is that explainable according to the defendant's story?"

The testimony of the defendant as we have just shown, is that he denied he returned to the house of the deceased; denied that he told the witness Parks that he had tried to kill Mrs. Villasor; denied on cross-examination that he fired more than two shots in the house of the deceased. The argument of counsel properly called attention of the jury to the fact that not only the testimony of Mrs. Villasor, but the physical facts contradicted the defendant's testimony and tended to prove that the defendant had fired three shots; that he came back to the house after shooting the deceased and made an attempt to kill Mrs. Villasor, just as he had stated to the witness Parks. This testimony goes to establish the contention of the prosecution that the shooting was premeditated, and laid a foundation for the argument of the district attorney that the defendant's version of the affair was untruthful and unreliable, and that the circumstances of the case amply supported the verdict which the jury subsequently returned.

The record is exceptionally free from error. The testimony is direct. The trial appears to have been fairly conducted and the verdict returned amply supported by the evidence.

The order and judgment are affirmed.

Waste, C. J., Langdon, J., Sherk, J., Seawell, J., and Thompson, J., concurred.

Rehearing denied.