## No. 14,603.

### Leopold v. The People.
(95 P. [2d] 811)

Decided October 16, 1939.   Rehearing denied November 13, 1939.

Mr. JOHN J. GIBBONS, Mr. B. F. REED, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. MCAULIFFE, Assistant, for the people.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, defendant below, was charged with the crime of murder. In the first instance he entered a plea of not guilty by reason of insanity at the time of the alleged commission of the offense and since, but upon trial at the conclusion of the people's evidence the plea first made was withdrawn and a plea of "not guilty" interposed upon which the case was submitted. The jury found the defendant guilty of murder in the first degree, fixing the penalty for the crime at death and judgment was entered accordingly.

The evidence shows that on Sunday evening, December 4, 1938, shortly before eight o'clock, defendant, in company with a man named Robert Gwynne, a paroled convict, went to a tavern owned by Emil Albrecht, the victim, located at 616 East Alameda avenue in the city of Denver, for the purpose of holding up and robbing the owner of his money. Defendant and Gwynne, who carried guns concealed upon their persons, entered the place just a few minutes before closing time. After being served with a coca cola the defendant, standing in front of the bar, drew his gun, pointed it at Albrecht who was a few feet away behind the bar, and told him to deliver

up his money and not move or attempt resistance or words to that effect. At this moment Robert Gwynne, the confederate of defendant, who was standing near the center of the room some distance from the bar, called to the defendant: "Look out, Bud, I am going to shoot" and he did shoot almost immediately, the bullet going into the floor nearby. There is evidence to the effect that just before Gwynne fired, his gun was directed at Albrecht's son who also was behind the bar but that Gwynne's aim was deflected by the menacing approach of a dog, which he forthwith dispatched with a second shot. In the meantime Albrecht, instead of throwing up his hands or submitting in any way to defendant's demand for his money, and notwithstanding that he was covered by defendant's gun, stooped down and set off a burglary alarm there installed and started to go out from behind the bar. Defendant then fired at the retreating man, the bullet striking him in the neck just below the right ear and killing him almost instantly. The defendant hastily proceeded to the kitchen back of the barroom in search of the money previously taken from the cash register by the younger Albrecht. Failing to locate the money defendant returned to the barroom and approached young Albrecht who was kneeling on the floor holding his father's head in his arms. The boy testified that he exclaimed to defendant: "You killed my father," whereupon defendant flourished his gun before the boy's face and said: "Damn you, you —— of a ——, you are getting the same if you don't tell me where the money is." The boy promptly told him the money was in the top part of the kitchen stove. Defendant returned to the kitchen, secured the money, about $200, and, accompanied by Gwynne, escaped to the street. They then together went to an apartment house near West 11th avenue and Acoma street in Denver. A few hours later the police raided the room in the apartment house where the robbers had taken refuge and in resisting arrest Gwynne was killed and the de-

fendant, after attempting to shoot a police officer, was wounded and captured. Sometime after the arrest and before trial defendant gave to the district attorney a signed written confession in the form of questions and answers in which the details of the transaction are set forth in general accord with other evidence on behalf of the people. In addition, at various times subsequent to his arrest, defendant verbally related substantially the same story to a number of police officials. The written confession, as well as the verbal admissions of the defendant were admitted in evidence without objection on the part of defendant. At the trial defendant did not take the witness stand and offered no evidence whatever.

Counsel for defendant frankly concede that under the evidence there could have been no other verdict than murder in the first degree and say that neither they nor the defendant have ever claimed that the offense committed by defendant was anything less than murder in the first degree. It seems evident from the record that when the case was submitted to the jury the principal matter of concern and controversy between the parties related to the penalty to be imposed. It is conceded that under the evidence the jury would have been warranted in fixing the penalty at death. Defendant contends, however, that the jury could, and probably should, have fixed the penalty at life imprisonment instead of death. In this connection they say that because of improper instructions given and the refusal to give a proper instruction to the jury, the jury was left free, if not actually invited, to disregard the evidence in fixing the penalty to be imposed in the event they should find defendant guilty of murder in the first degree. Our statute provides that all murder committed in the perpetration or attempt to perpetrate the crime of robbery shall be deemed murder in the first degree. '35 C. S. A., chapter 48, §32. The same section provides that if a jury shall find a defendant guilty of murder

in the first degree it is its duty to fix the penalty at life imprisonment or death. By Instruction No. 5 the court instructed the jury as follows: "Murder is the unlawful killing of a human being with malice aforethought, express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned. All murder which is committed in the perpetration of, or attempt to perpetrate robbery, shall be deemed murder in the first degree, and if you find from the evidence, beyond a reasonable doubt, that the defendant committed the *homicide* charged in the information, and further find from the evidence, beyond a reasonable doubt, that said *homicide* was committed in the perpetration of, or attempt to perpetrate robbery, as defined in these instructions, then the elements of malice, deliberation, premeditation and intent are not necessary elements of first degree murder, and need not be proved." The defendant contends that the use therein of the word "homicide" (which we have italicized to facilitate reference), instead of the term "murder" could have had no other effect than to minimize, in the minds of the jury, the importance of considering the nature and degree of defendant's atrocity in committing the crime charged in independently exercising their discretion in fixing the penalty, whereby it is urged the instruction is rendered erroneous. We are satisfied that the use of the word "homicide" in the instruction is eminently proper and that had the word "murder" been substituted therefor, as urged by defendant, a more serious situation than is here presented might have existed. A homicide is the killing of a human being by another. Some homicides may be justified and, hence, not unlawful. It is the unlawful commission of a homicide that renders the perpetrator guilty of some degree of murder or manslaughter as may be determined from the attending circumstances. Hence, if, instead of using the word "homicide" in referring to the killing, the court had employed the word "murder," the instruction would be

subject to the condemnation that the court had informed the jury that, as a matter of law, the killing was unlawful, which was solely their province to determine as a matter of fact from the evidence.

The circumstance that the instruction informed the jury that a verdict of first degree murder would be warranted without proof of "the elements of malice, deliberation, premeditation and intent," if they found that the homicide was committed by the defendant in the perpetration of a robbery, logically does not lend support to the defendant's assertion that the jury thereby were misled into believing they might ignore these factors in fixing the penalty imposed. Without reference to the pertinency of these elements in the latter connection we must conclude that the instruction is free from the vice suggested. Even though counsel for defendant as well as the defendant himself, as is confessed in the briefs, at all times were conscious that the offense committed was murder in the first degree and a verdict therefor inevitable, the plea of not guilty, nevertheless, raised a formal issue as to his guilt which first had to be resolved by the jury before any question as to the possible penalty could be considered. On the question of his guilt and the degree of his offense, if guilty, it was essential that they be instructed as to what, in law, constituted first degree murder within the scope of the evidence adduced. That was all the instruction under consideration purported to do or did. It properly stated the law in this respect. *Andrews v. People*, 33 Colo. 193, 79 Pac. 1031. The instruction was not designed to relate to the *degree of the penalty* which might be imposed on defendant, but to the *degree of murder* which would result from the killing of a human being under the circumstances set out in the instruction. It therefore is not within the bounds of reason to assume that the jury considered the instruction otherwise than as was intended.

In the written confession of defendant and the

admissions which he made concerning the transaction, received in evidence, defendant is quoted as stating, in substance and effect, that he did not intend to murder Albrecht; that he aimed at his shoulder to keep him from leaving the room and that he did not want to kill anybody. Assertedly, on this evidentiary basis, defendant tendered the following instruction: "You are instructed that the question of whether or not the defendant intended to kill the deceased at the time of firing the fatal shot is not material in determining the question of his guilt or innocence of the crime charged in this case. You are further instructed, however, that evidence relating to defendant's *specific* intent in firing said shot is material and *should* be considered by you along with all other evidence in the case, in fixing his punishment, in the event you should find him guilty of murder in the first degree." The court refused to give this instruction and instead, over defendant's objection, gave one in the precise words of the tendered instruction except that the word "specific," which we have italicized for reference, was omitted and the word "may" substituted for the word "should", also italicized, in the instruction as quoted. Defendant contends that this alteration in the instruction left the jury free to disregard entirely the specific purpose or intent of the defendant in firing the shot that proved fatal when they came to fixing the punishment. It will be observed from the context of the sentence under consideration in the tendered instruction, that the word "specific" is used in a sense synonymous to "expressed" and that defendant sought by the instruction to have the jury mandatorily informed that they *must* consider the post-crime self-serving declaration of the defendant as to his intent in firing the fatal shot. As a purely procedural matter the tendered instruction was improper, since the trial court has no duty to, and should not, select the salient points in the evidence, favorable and unfavorable, and specifically call them to the attention of the jurors. *Lowe v.*

*People,* 75 Colo. 603, 234 Pac. 169; *Urban v. United States,* 46 F. (2d) 291.

■■ Further, where pertinent, the question of intent must be determined from all the circumstances connected with the perpetration of the offense in which declarations of the defendant, while a part of the panorama, have no special or controlling effect. The instruction as given permitted the jury, in the event they found defendant guilty of murder in the first degree, to consider the defendant's intent in firing the fatal shot, in fixing his punishment. As has been pointed out, where a homicide is committed in the perpetration of a robbery, proof of specific intent is not a prerequisite to a conviction for first degree murder. In view of this it may be questioned, as a matter of law, whether it ever is proper to give an instruction requiring the jury in its deliberation on the penalty, to consider an element unessential to a conviction of the crime charged in the first instance and concerning which proof is not necessary. In the exercise of its discretion to choose between the two modes of punishment for first degree murder prescribed by the statute, it is the duty of the jury to weigh and consider all the evidence in the case. *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081. On the theory we mention, the instruction likely would have been vulnerable to an objection by the people. As given, in permitting unlimited consideration of his intent in connection with fixing the penalty for the crime, the instruction patently was favorable to the defendant and constituted a merciful and benevolent donation in his behalf without any particular sanction in the law. Under such circumstances he cannot be heard to complain.

The paucity of objections of the defendant and the technical nature of those advanced proclaim the fairness of the trial accorded defendant in the district court. He was at all times represented by able and painstaking counsel who, as is evidenced by the record before us, zealously devoted themselves to his cause. The evidence

forecast the probable conclusion of the regrettable transaction.

The judgment is affirmed and it is ordered that it be executed during the week commencing Monday, December 4, 1939.