No. 14,747.

TOWNSEND *v*. THE PEOPLE.
(111 P. [2d] 236)

Decided February 24, 1941. Rehearing denied March 17, 1941.

Mr. EUGENE H. TEPLEY, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, on petition for rehearing, for the people.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as defendant, was convicted of murder in the first degree and sentenced to death in accordance with a verdict which so prescribed. The victim of the homicide was defendant's wife. The cause of her death was an intercranial hemorrhage and shock following a severe and grievous beating administered by defendant. The plea

was not guilty and not guilty by reason of insanity at the time of the homicide and since. Counsel who appears here for defendant, did not participate in the trial below.

The initial onset, a slap on the face of the deceased, was made in the course of a family argument over a trivial matter at about 8:30 o'clock in the evening. Thereafter assaults upon the wife continued intermittently with accelerated cruelty and viciousness until well beyond midnight, when, after bungling efforts to render aid to his victim, defendant caused their fourteen year old daughter—except for him the only surviving witness to the tragic occurrence—to call a physician who arrived at 1:30 o'clock a. m. Mrs. Townsend was then dead. That the deceased engaged in recurrent verbal clashes with defendant until near the end, when she became dazed, seems certain from the evidence, as does the fact that she participated unequally in the physical strife for at least a portion of the period, but whether such was done offensively or defensively is shadowed in doubt. None of the evidence, including the sordid story of defendant, tends to excite sympathy for him, beyond such compassion as naturally may be felt for one who must be burdened with the pangs of an agonized soul as the result of his conduct. Nevertheless, under the beneficent principles of our law, he was entitled to a fair trial upon the law and evidence. In our opinion such clearly was denied him by certain fatally defective pronouncements in Instruction No. 11 intended to state the law pertaining to the degree of a murder accomplished by means of torture, made operative prejudicially by the directions incorporated therein, and in Instruction No. 12. By other appropriate instructions the court informed the jury that, dependent upon its view of the facts, it might acquit defendant or find him guilty of either murder in the first or second degree, or of voluntary or involuntary manslaughter, and in ordinary and accepted form,

without objection by defendant and at his solicitation with respect to the lesser degrees, the court bespoke the standard ingredients of such offenses and the legal features distinguishing them. In addition to the instructions of the foregoing type, under the belief that the evidence brought the case within the purview of the clause of section 32, chapter 48, '35 C.S.A., which provides, inter alia, that all murder which shall be perpetrated by means of torture or by poison or lying in wait, shall be deemed murder of the first degree, the court, over the objection of the defendant, by Instruction No. 11, informed the jury that:

"Under the Colorado statute defining murder, elsewhere in these instructions quoted, it is provided that all murder which shall be perpetrated by means of torture (among other means) shall be deemed murder of the first degree.

"The crime of murder always implies atrocity and cruelty in the guilty part [party]; but there are degrees of criminality in that respect. To justify a finding of murder in the first degree by means of torture require that something more than the ordinary incidents of the crime exist—something implying more than ordinary criminality and manifesting a degree of atrocity or cruelty which may be considered as peculiar and extreme. You must believe beyond a reasonable doubt that the alleged murder charged in the information was extremely atrocious or cruel before you can find the defendant guilty of murder of the first degree by means of torture.

"If you believe beyond a reasonable doubt that the defendant at the time of the commission of the alleged crime was sane, and now is sane; that the deceased was the wife of the accused, and that he caused her death by wilfully, maliciously, premeditately, and excessively whipping, striking, beating or kicking her about the body and the head, at times when she was prostrate on the floor, and that these acts were repeated at intervals

over a long period of time, the killing would be murder in the first degree, provided you also believe beyond a reasonable doubt that evidence of these acts in connection with all the other evidence in the case manifests a degree of cruelty and atrocity which must be considered as peculiar and extreme."

Instruction No. 12 charged the jury as follows:

"You are instructed that ordinarily a defendant cannot be convicted of murder if the jury believes that the defendant did not intend to kill the deceased, intent to kill usually being an essential element of the crime of murder. In this case, the people contend that the deceased came to her death by means of torture inflicted by the defendant.

"Although you may believe from the evidence that the defendant at the time of the commission of the alleged crime did not intend to kill the deceased, or although you may entertain a reasonable doubt of such intent, nevertheless, if you believe from all the evidence beyond a reasonable doubt that the defendant at the time of the commission of said alleged crime was sane, and now is sane, and also believe beyond a reasonable doubt that the deceased came to her death by means of malicious and premeditated torture inflicted by the defendant, as 'torture' is elsewhere herein defined, the defendant would be guilty of murder of the first degree, even though he did not at the time of the commission of said alleged crime intend to kill the deceased."

■ The evident purpose of section 32, supra, was to proclaim that where a person is killed by another in the perpetration of torture, intentionally and unlawfully inflicted, such premeditated intent to inflict torture is, by implication of law, transferred therefrom to the homicide actually committed so as to make the latter offense an unlawful taking of life with express malice aforethought and thus murder in the first degree, as is declared therein. In such case the turpitude of the act of torture supplies the place of deliberate and premedi-

tated malice, is its legal equivalent, and the purpose to kill is conclusively presumed from the intention to perpetrate the torture unlawfully inflicted. *People v. Murphy,* 1 Cal. (2d) 37, 32 P. (2d) 635. As respectively pertaining to murder by means of poison and lying in wait associated in the class of murder by torture by section 32, supra, see *Ehrhardt v. People,* 51 Colo. 205, 117 Pac. 164. As to rule in killing in commission of felonies enumerated in section 32, supra, see *Andrews v. People,* 33 Colo. 193, 79 Pac. 1031, 108 Am. St. Rep. 76, and *Leopold v. People,* 105 Colo. 147, 95 P. (2d) 811. In this view Instruction No. 12 last above quoted, to the giving of which defendant did not object, is generally sound, provided the definition of "torture" contained in Instruction No. 11, which expressly is made the criterion of applicability of No. 12, is legally sufficient and proper. Conversely, if the definition of "torture" and the legal specifications of the conduct said to constitute such as contained in Instruction No. 11, as a matter of law was deficient and erroneous, both Instructions Nos. 11 and 12, ipso facto and immediately, under the gruesome facts of this case, would be transformed into terrible instruments of injustice permitting, if not impelling, a verdict of first degree murder without any requirement for consideration of, or finding by, the jury of any intent to kill, premeditation, deliberation and express malice on the part of the accused which otherwise would be essential prerequisites to a valid conviction for the degree of murder returned. For specifications of distinction between the degrees of murder in ordinary cases and the province of the jury in the resolution thereof, see *Ingles v. People,* 92 Colo. 518, 22 P. (2d) 1109; *Kent v. People,* 8 Colo. 563, 9 Pac. 852; *Murphy v. People,* 9 Colo. 435, 13 Pac. 528; *McAndrews v. People,* 71 Colo. 542, 208 Pac. 486, and *Campbell v. People,* 55 Colo. 302, 133 Pac. 1043.

By Instruction No. 11, the court informed the jury that conduct implying more than ordinary crimi-

nality and manifesting a degree of atrocity or cruelty which might be considered as peculiar and extreme, legally constituted "torture" as that term is employed in section 32, supra. Thus, the jury was told authoritatively that a murder committed with peculiar and extreme atrocity and cruelty amounted to a "murder perpetrated by means of torture." Neither in legal conception nor in ordinary usage does the primary meaning of the word "torture" permit of the synonymy assumed in the instructions under consideration. In the Century Dictionary and Cyclopedia, vol. X, page 6396, the first definition of the noun "torture" is as follows: "1. The act of inflicting severe pain as a punishment, as a means of persuasion, or in revenge; specifically, the act of inflicting such pain under the orders of a court of justice, royal commission, ecclesiastical organization, or other legal or self-constituted judge or authority, especially as a supposed means of extorting the truth from an accused person or as a commutative punishment (also called specifically *judicial torture*) the pain so inflicted." In Ballentine's Law Dictionary, page 1288, the meaning of "torture" is given in the following words: "Torment by means of the rack, or other contrivances for inflicting physical pain, employed for the purpose of extorting confessions. See 4 Bl. Comm. 32. The Century Dictionary defines the word as meaning the act of inflicting severe pain as a means of persuasion." In the first sentence under the title "Torture" in New International Encyclopedia (2d ed.), volume XXII, page 366, definitively appears the following: "The infliction of severe bodily pain either as punishment or for purpose of revenge or for the purpose of compelling the person tortured to give evidence or make confessions in judicial proceedings." Webster's New International Dictionary, 1936 edition, page 2674, defines "torture" as being: "1. Act or process of inflicting severe pain, esp. as a punishment, in order to extort confession, or in revenge; specif., act of inflicting such pain under judicial or other au-

thoritative order, as by water or fire, by the boot or thumbscrew, by the rack or wheel, etc."

Under these definitions, which we think historically and accurately describe both the popular and legal conceptions of torture, it is apparent that even if the term "cruel" as used in Instruction No. 11 is considered as importing "a malicious act inflicting severe pain," and "atrocious" as being synonymous with "wantonly wicked, cruel, horrible or shocking" (New Standard Dictionary), the definitions of such instructions were still deficient in failing to advise the jury that as an essential of torture the infliction of the prerequisite severe physical pain must be as a means of persuasion, punishment or in revenge. That the legislature in promulgating section 32, supra, did not employ the term "torture" as meaning "agony, anguish, pang or pain," all accepted as colloquial synonyms therefor (Century Dictionary and Cyclopedia; New Standard Dictionary, and Webster's New Dictionary), is quite apparent from the incongruity in definition and purpose which would result if any of such was substituted in the statute in lieu of the word "torture."

Our study discloses, as we conceive, how the questioned erroneous language happened to creep into Instruction No. 11, and at the same time demonstrates its utter inapplicability to the case at bar. In the opinion in *Commonwealth v. Devlin*, 126 Mass. 253, 255, appears the following sentence: "The crime of murder always implies atrocity and cruelty in the guilty party; but there are degrees of criminality in that respect, *even in the felonious and malicious taking of human life; and, in order* to justify a finding of murder in the first degree, *it* requires that something more than the ordinary incidents of *the* crime *shall* exist—something implying more than ordinary criminality, and manifesting a degree of atrocity or cruelty which *must* be considered as peculiar and extreme." Reference to Instruction No. 11 hereinabove set out will show that except

for punctuation the first two sentences of the second paragraph definitive of "torture" are a verbatim transposition of the last quoted excerpt when the portions thereof we have italicized are eliminated and the phrase "by means of torture" is added following the word "first degree," and near the end "may" is substituted for the italicized "must." The Massachusetts statute under consideration in that case declared that when a murder was "committed with extreme atrocity or cruelty," the crime was murder in the first degree. The question involved was whether a challenged instruction left the jury free to determine whether the facts therein mentioned were proved and, if proved, whether such (beating, stamping and jumping upon the deceased) amounted to the extreme atrocity and cruelty which that statute required to constitute the highest degree of murder. The quoted comment pertains to the second point. At no place in the opinion or in the statute considered does the word "torture" appear, and the Massachusetts court was not called upon to even consider, much less comment upon, the subject with which we are here concerned. Accordingly, in that decision no definition of what constituted a murder perpetrated by means of torture was attempted or promulgated and no basis presented whereby a Colorado court would be warranted in instructing a jury, in effect, that conduct which constituted first degree murder under the express technical words of the Massachusetts law—not found in our statute—attained the same degree here under an entirely diverse and different statutory provision. For an enumeration of the variant specific circumstances which by legislative declaration in different states make a resultant homicide murder of the first degree, see Wharton on Homicide (3d ed.), §106.

Since, in our opinion, irrespective of questions of fact, a reversal of the judgment of the district court is imperative here because of the erroneous abstract statements of law, highly prejudicial to defendant, contained

in the instructions previously mentioned, we deem it unnecessary to comment upon the debatable question of whether the state of the evidence in the record before us warranted the giving of instructions on the torture theory. The latter conclusion is further fortified by the possibility that upon a new trial of the cause a different factual situation might develop, in which event our view of the testimony in the first trial would be, at least, superfluous.

The circumstance that the issue here presented thus is one of law and the ultimate question for resolution is whether by error of law defendant was denied a fair trial, makes the case of *People v. Murphy, supra,* of little pertinency here. Therein the supreme court of California by the authorization of a statute—the counterpart of which does not exist in Colorado—examined the *evidence* as weighers of fact at the request of the defendant, who did not seek a new trial, but solely asked that a judgment of conviction of first degree murder by a trial court sitting without a jury, be modified and reduced to second degree murder on the ground that, as the testimony disclosed his intoxication at the time the offense was committed, he was incapable of forming the wilful, deliberate and premediated intent to kill which was necessary to constitute murder in the first degree. From an examination of the entire record the Supreme Court concluded it was unable to say that defendant's state of intoxication was such as to preclude his forming the specific intent mentioned and as further justifying the degree of murder adjudged, supplementally stated that, in its opinion, the facts disclosed a murder perpetrated by torture and, hence, of the first degree by operation of a statute which, in that particular, is similar to our section 32, supra. From the opinion it seems obvious that the latter conclusion was grounded upon the Supreme Court's deduction based upon its own examination of the evidence, independent of any consideration or finding upon the torture ele-

ment by the trial court, and was a determination of fact by the appellate tribunal as a matter of first impression, which it had a right to make under the statute involved, but which in the case at bar would be neither authorized nor proper. No definition of torture nor declarations of law concerning the legal essentials thereof were made or required to be made in the Murphy case opinion and from aught that appears therefrom the legal theory followed in reaching the conclusion announced in no way was inconsistent with our expressions on the subject.

In view of the fact that it is not likely that any of the situations upon which further errors are assigned will arise in the course of a new trial, we deem it unnecessary to critically examine or discuss them. The judgment is reversed and the cause remanded for new trial.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE BAKKE and MR. JUSTICE BURKE dissent.

MR. JUSTICE OTTO BOCK. I concur. However, and in addition, in my opinion, the testimony in the record before us is insufficient to bring the facts within the meaning of the term "torture" as found in section 32, chapter 48, supra. As to whether the evidence was sufficient to justify the submission to the jury of the issue of murder in the first degree, in the event of a new trial, I express no opinion.