416 P.2d 601

**STATE of Arizona, Appellee,**

v.

**Calvin BROCK, Appellant.**

**No. 1549.**

Supreme Court of Arizona.

In Banc.

July 11, 1966.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., and Robert K. Corbin, County Atty., for appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, John P. Frank, and Sydney Block, Phoenix, for appellant.

BERNSTEIN, Vice Chief Justice.

Appellant, hereinafter called defendant, appeals from a conviction of first degree murder and sentence of life imprisonment entered by the Superior Court of Maricopa County.

The uncontroverted facts are that defendant and the decedent, a girl less than 20 years of age, had been going together approximately 2 years prior to the homicide in question. During that time, they became intimate and marriage plans were discussed. On the night of January 29, 1964, defendant and decedent left a tavern near Phoenix to find a restaurant, but decided instead to drive into the desert.

A brief period of romance followed, then defendant began questioning decedent about another man with whom defendant suspected decedent was having an affair. She admitted sexual relations with the other man and defendant became enraged. He ripped the rear view mirror from the automobile and smashed a window of the car door with his fist. He then pulled decedent from the car and began to beat her about the face, head and body while continuing to question her about the other man. He stopped to smoke a cigarette and decedent got back into the car. Defendant drove a short distance, again became enraged, stopped, pulled decedent from the car and beat her again during which time she first denied, then again admitted relations with the other man. She escaped twice but defendant dragged her back to the car where he held her against the trunk lid with one hand while he again beat her with the other. He then placed her on the front seat of the car and, while driving back to Phoenix, further injured decedent by stopping suddenly causing her head to strike the dash because "he was just mad and wanted to hurt her."

When defendant got to his apartment he administered first aid to the decedent and called an ambulance which arrived with the police. Decedent died on the way to the hospital of a subdural hemorrhage caused by trauma to the head which the state's physician said was consistent with the beating she had received. Approximately five hours had passed since defendant and decedent left the tavern.

Defendant's statements to the police were the source of information concerning what transpired from the time they left the tavern until the police arrived at defendant's apartment. These statements came into evidence through the testimony of police officers who related what they had been told by defendant prior to and during interrogation but before the officers or defendant knew the girl had died.

Defendant's first assignment of error challenges the trial court's instruction to the jury on murder by torture. The instruction was as follows:

"The Court instructs you that all murder which is perpetrated by means of torture is murder of the first degree and all other kinds of murder are of the second degree. Murder which is perpetrated by torture is declared by the law to be murder of the first degree and if you should find that the defendant committed that crime you will have no choice but to designate the offense as murder of the first degree and *essentially an element of murder by torture is that a person who commits the act causing the death of another human being does so with the intention to cause and does cause such other person to suffer pain and endure suffering from such acts.*" (Emphasis added.)

The first sentence of the above instruction was based upon the state's requested instruction No. 4 to which defendant duly objected and about which we will comment later.

Defendant argues that the evidence did not justify giving a torture instruction, but if it did the particular instruction given failed to state the elements of murder by torture. To determine whether the evidence justified a torture instruction, we must first discuss the elements of murder by torture.

 Murder is perpetrated by torture when the assailant intends to cause cruel suffering for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity. People v. Daugherty, 40 Cal.2d 876, 256 P.2d 911, cert. den. 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352. There need not be an intent to cause death, but there must be a separate intent to cause extreme pain and suffering for one of the enumerated purposes. People v. Anderson, Cal., 46 Cal.Rptr. 763, 406 P.2d 43; People v. Tubby, 34 Cal.2d 72, 207 P.2d 51; Townsend v. People, 107 Colo. 258, 111 P.2d 236. It is not enough that defendant intended to cause extreme pain and suffering; there must also be evidence that he did so for revenge, extortion, persuasion or some other untoward propensity. Townsend v. People, supra; People v. Heslen, Cal., 163 P.2d 21 modified 27 Cal.2d 520, 165 P.2d 250. Furthermore, the death must have been caused by the torture. State v. Folk, 78 Ariz. 205, 277 P.2d 1016.

 The instruction given by the trial court was erroneous having failed to include the elements of murder by torture. The court failed to instruct the jury that it must find defendant intended to cause extreme suffering for the purpose of persuasion or to extort a confession from decedent as the evidence showed, and that death must have resulted from the torture. It is clear that our emphasized portion of the trial court's instruction quoted above was error of such a fundamental nature that it deprived defendant of a fair trial. State v. Johnson, 99 Ariz. 52, 406 P.2d 403.

 Defendant's next contention is that the evidence did not justify giving a torture instruction. We think that it did. Defend-

ant admitted that he wanted to hurt decedent. Moreover, the jury could infer from the bruised condition of decedent's body that defendant intended decedent to suffer. People v. Misquez, 152 Cal.App.2d 471, 313 P.2d 206. Hence, there was evidence from which the jury could conclude that defendant specifically intended to cause extreme pain and suffering.

There was also evidence in the record relevant to defendant's motive for administering the beating. Defendant told one of the officers that after he stopped his automobile the second time, decedent denied relations with the other man. The officer testified:

"He (defendant) said he then began to hit her in the face and body with his fist to try to get the truth out of her. He said that after hitting her quite a few times she finally did admit that she had sex relations with this man."

Thus, there was evidence that defendant's motive for beating decedent was to persuade her to tell the truth or to extort a confession from her and from the physician's testimony the jury could have found that death was caused by the beatings she received.

 The trial court had a duty to correctly instruct the jury on the elements of murder by torture applicable to the case being tried and its failure to do so, though not requested by the defendant, constitutes reversible error. State v. Howard, 97 Ariz. 339, 400 P.2d 332.

 Since this case must be retried, we will comment upon other portions of the instructions given to the jury though not assigned as error by the defendant. The court defined malice as:

"* * * wishing to vex, annoy and injure another person or attempt to do a wrongful act established either by proof or presumption of law.

* * * * * *

"Such malice may be expressed or implied. It is expressed when there is manifested a deliberate intention to un-

**172**

lawfully take away the life of a fellow creature. It is implied when no considerable provocation appears, when the circumstances attending a killing show an abandoned and malignant heart."

Defendant objected to the first part of the instruction and to the trial court's "refusal to give the instruction on the term malice submitted by the defense as meaning the intent to kill a human being without legal justification for (sic) excuse." Malice means the intent to kill without legal justification. State v. Schantz, 98 Ariz. 200, 403 P.2d 521, cert. den. 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530.

 The trial court gave a confusing instruction on insanity which was the defendant's principal defense. In one place, the court stated:

> "Insanity, as the phrase is used in these instructions, means such a disease or condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of his act and of distinguishing between right and wrong in his relation to the act with which he is charged."

This part of the insanity instruction stated the elements conjunctively when it was incumbent upon the court to state the elements of insanity disjunctively. In State v. Schantz, supra, we said:

> "In the past, Arizona has uniformly adhered to what is known as the Rule of M'Naghten's Case as the test for criminal insanity."
>
> \* \* \* \* \* \*
>
> "This test of legal insanity has two elements. An accused must have had at the time of the commission of the criminal act:
>
> (1) Such a defect of reason as not to know the nature and quality of the act, *or*
>
> (2) If he did know, that he did not know he was doing what was wrong.
>
> "Where insanity is an issue, the burden of the State is to establish beyond a rea-

sonable doubt the converse; that is, that the defendant knew the nature and quality of his act *and* that he knew that what he was doing was wrong." (Emphasis in original.) 98 Ariz. at 206–207, 403 P.2d at 525.

 We also note that on the retrial the trial court must instruct the jury on first degree murder by means other than torture and second degree murder as well as manslaughter if there is evidence tending to show defendant might be guilty of those offenses. Application of Williams, 85 Ariz. 109, 333 P.2d 280. The instruction on second degree murder must include the element of malice, State v. Singleton, 66 Ariz. 49, 182 P.2d 920, and exclude circumstances of mitigation, justification or excuse. Campbell v. Territory, 14 Ariz. 109, 125 P. 717.

 Defendant next contends he was denied counsel while making incriminating statements to the police officers. He argues that the statements are rendered inadmissible by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. We construed the Escobedo case in State v. Miranda, 98 Ariz. 18, 401 P.2d 721, cert. granted 382 U.S. 925, 86 S.Ct. 320, 15 L.Ed.2d 338. The United States Supreme Court reversed our decision on June 13, 1966. At the retrial of the instant case, the trial court must apply the principles enunciated in Miranda by the United States Supreme Court. Rule 314, Rules of Criminal Procedure, 17 A.R.S.

Reversed and remanded.

STRUCKMEYER, C. J., and LOCKWOOD and McFARLAND, JJ., concur.

UDALL, Justice (dissenting).

I dissent from the majority opinion in this case for the following reasons:

I agree that the evidence justifies the giving of an instruction on the charge of murder as perpetrated by means of torture. There was ample evidence from which the jury could conclude that defendant intended

to hurt the deceased and to cause her extreme pain and suffering; and further, there was evidence the defendant's motive for beating the decedent was to extort a confession from her. The physicians' testimony regarding the condition of the body of the deceased, also justifies the conclusion that the decedent had met her death as a result of prolonged, brutal beatings that were inflicted upon her by defendant.

I disagree with the majority, however, that the torture instruction given by the court was erroneous. The first sentence of the instruction, namely:

"The Court instructs you that all murder which is perpetrated by means of torture is murder of the first degree",

is a correct statement of the law. However, the balance of the sentence, which reads:

"and all other kinds of murder are of the second degree",

is an incorrect statement of the law. It was error to give this part of the instruction, but it was not prejudicial to the defendant since the jury was not considering any accusation against him except murder by torture. The other classifications of first degree murder set out in A.R.S. § 13–452, which are, murder perpetrated by means of poison, or lying in wait, or by any other kind of wilful, deliberate killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, were not involved in this case; therefore, it was not necessary for the court to instruct the jury on any of these crimes as constituting murder in the first degree, and by its instruction the court limited the jury as to the first degree murder charge to a consideration of the question of murder by torture. The error if any was not prejudicial to the defendant. Ariz. Const., Art. 6, § 27 (1960), A.R.S.

It is my opinion that the remaining part of the instruction correctly states the law. It reads:

" * * * Murder which is perpetrated by torture is declared by the law to be murder of the first degree and if you

should find that the defendant committed that crime you will have no choice but to designate the offense as murder of the first degree and essentially an element of murder by torture is that a person who commits the act causing the death of another human being does so with the intention to cause and does cause such other person to suffer pain and endure suffering from such acts."

This portion of the instruction is the identical language used in California Criminal Jury Instructions at page 247; It is implicit in the instruction that an intent to cause pain and endure suffering must be for the purpose of revenge, extortion, persuasion, or to satisfy some other untoward propensity.

Particular significance is attached to the instruction which has been adopted in the State of California, since Arizona's § 13–452, A.R.S., was adopted from California. See West Ann.Calif.Pen.Code § 189.

Torture as used in § 189 of the California Penal Code has been interpreted to, mean the intentional infliction of grievous pain. People v. Tubby, 34 Cal.2d 72, 207 P.2d .51. The elements of murder by torture are (1) an intent to inflict pain, (2) actual pain suffered, and (3) some protraction in time. People v. Heslen, 163 P.2d 21 (Cal.1945), modf. 27 Cal.2d 520, 165 P.2d 250. The purpose or motive of the act must be for revenge, extortion, persuasion or to satisfy some sadistic impulse. The purpose or motive for doing an act is not one of the elements of the crime. As we stated in Singh v. State, 35 Ariz. 432, 441, 280 P. 672, 675, 67 A.L.R. 129, "Motive is not an essential element of crime and becomes important only when the evidence, direct and circumstantial, fails to make out a satisfactory case, and then only as evidence." See also, State v. Tuttle, 58 Ariz. 116, 118 P.2d 88; State v. Eisenstein, 72 Ariz. 320, 235 P.2d 1011; People v. Bermijo, 2 Cal.2d 270, 40 P.2d 823.

While there may be a difference in meaning between motive and purpose, the majority opinion does not distinguish the two.

The words are used interchangeably in the majority opinion and if they are of the same meaning, it was not error on the part of the trial court to omit from the instruction, to the jury the defendant's motive or purpose, since the offense was clearly shown. It is for this reason, in my opinion, that California has never included the matter of motive or purpose in the jury instruction on murder by torture.

The majority cite the following California cases in support of the their proposition that the instruction given by the trial court, on the question of murder perpetrated by torture, was erroneous: People v. Daugherty, 40 Cal.2d 876, 256 P.2d 911, cert. den. 346 U.S. 827, 74 S.Ct. 47, 98 L.Ed. 352; People v. Anderson, 46 Cal. Rptr. 763, 406 P.2d 43; People v. Tubby, supra, and People v. Heslen, supra. It is respectfully submitted that not one of the cases cited deals with the problem of giving an erroneous instruction on the question of torture. In each instance these cases discuss the elements that constitute the crime of murder by torture, and the majority—in its opinion—find that all of the elements of murder by torture are present in this case, including the intention to hurt the deceased and cause her extreme pain and suffering, and further, that the defendant in this case intended to extort a confession from the deceased as he beat her with his fists until she died from the effects thereof.

The majority cite the Colorado case of Townsend v. People, 107 Colo. 258, 111 P.2d 236, which does deal with the giving of an erroneous instruction in a charge of murder by torture. However, the instruction given in that case was erroneous on its face and is not in point here.

By its instruction No. 11 the Colorado court informed the jury "that conduct implying more than ordinary criminality and manifesting a degree of atrocity or cruelty which might be considered as peculiar and extreme, legally constituted 'torture' as that term is employed in section 32" of the Colorado statute, and the opinion stated,

"[t]hus, the jury was told authoritatively that a murder committed with peculiar and extreme atrocity and cruelty amounted to a 'murder perpetrated by means of torture.' Neither in legal conception nor in ordinary usage does the primary meaning of the word 'torture' permit of the synonymy assumed in the instructions under consideration."

The Colorado Supreme Court, in a 4–3 decision, held that the trial court was in error in giving an instruction that murder committed with peculiar and extreme atrocity and cruelty amounted to murder perpetrated by means of torture. It is patently clear that the holding of the Colorado court does not provide an authority for the action now being taken by the majority, since these elements inserted in the Colorado instruction were outside the law as defined in the Colorado statute.

I therefore disagree that fundamental error was committed in the giving of the instruction on murder by torture. Defense counsel claimed no such error during the trial, nor was such claim made in the motion for a new trial, nor does the majority cite any authority whatever that the giving of the instruction was fundamental error.

The majority implies, but does not say, that error was committed in the giving of the instruction on malice. Since the information charged defendant with the crime of murder by torture it was not necessary to give an instruction on malice. As has been stated:

"* * * where a person is killed by another in the perpetration of torture, intentionally and unlawfully inflicted, such premeditated intent to inflict torture is by implication of law, transferred therefrom to the homicide actually committed so as to make the latter offense an unlawful taking of life with expressed malice aforethought and thus murder in the first degree, as is declared therein. In such case the turpitude of the act of torture supplies the place of deliberate and premeditated malice, is its legal equivalent, and the purpose to kill

is conclusively presumed from the intention to perpetrate the torture unlawfully inflicted." Townsend v. People, 107 Colo. 258, 111 P.2d 236. See also People v. Murphy, 1 Cal.2d 37, 32 P.2d 635.

Since there was some evidence tending to show that the defendant committed the killing under the heat of passion, the court correctly instructed the jury as to the crime of manslaughter.

Next, I disagree with the holding of the majority in reference to the defense of insanity. Again I would point out that neither of the learned counsel for defendant, who thoroughly briefed the claimed errors that were allegedly committed by the trial court, made any assignment that the court erred in giving the instruction on insanity.

The majority assert that the opening paragraph on this instruction is confusing, without stating wherein the instruction tends to confuse. The majority opinion fails to state that the following instruction was given first by the court as to insanity which states the elements of insanity:

> "In arriving at the conclusion as to the sanity of the person accused of the crime you are to consider and weigh carefully all of the evidence in the case bearing upon the subject and ascertain therefrom whether at the time of the offense the defendant was in such a state of mind that he could not only distinguish between right and wrong but to realize the quality and nature of the act he was doing."

The part of the instruction condemned by the majority was taken from CALJIC, Revised Edition, § 801. Both of the elements, referred to in State v. Schantz, 98 Ariz. 200, 403 P.2d 521, are contained in the instructions given and it is my view that it fully complies with the statement set forth by this Court in Schantz, which reads:

> "Where insanity is an issue, the burden of the State is to establish beyond reasonable doubt * * * that the defendant knew the nature and quality of his act *and* that he knew what he was doing was wrong." 98 Ariz. at p. 207, 403 P.2d at p. 525.

The majority opinion misconstrues the *Schantz* case by taking the burden imposed upon the state to prove both elements of insanity and requiring the elements be set forth in the disjunctive in a definition of insanity. The definition adopted by the Court was correct particularly in view of the previous portion of the insanity instruction.

I am firmly of the opinion there was no reversible error committed by the trial court at the trial of this case, and I therefore would affirm the verdict of the jury and the judgment of the court.

The majority, however, have reversed the decision of the trial court and have returned the case for a retrial with instructions that the trial court must apply the principles enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Again, I disagree with the majority since it is my opinion that the retrial should be conducted in compliance with the principles enunciated in the case of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, which opinion was handed down one week later than the *Miranda* opinion. The retrial of this case deals precisely with the same crime and the same facts will be involved. In *Johnson,* the Supreme Court has specifically stated that the principles enunciated in *Miranda* would not apply to cases brought to trial before June 13, 1966. It is neither logical nor reasonable that the retrial of this cause should be conducted under different rules than prevailed when it was tried the first time. In *Johnson* the Supreme Court said, "We hold further

that Miranda applies only to cases in which the trial began after the date of our decision one week ago."

It was the intention of the high Court to give stability and uniformity to all cases that had been tried previous to June 13, 1966. It is contrary to the principle of fair play to change the rules in the middle of a case. It would work an extreme hardship on law-enforcement officers if all cases that are sent back for a new trial, because of some technical error, at most, in the trial of the case, must at the retrial be governed by the principles of *Miranda* rather than the principles enunciated in *Johnson*.